DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Dexter Harrison was convicted of aggravated robbery with a firearm specification, possession of counterfeit controlled substances, and possession of marijuana. His appeal addresses only the aggravated robbery conviction. The judgment of the trial court is affirmed because his conviction is not against the manifest weight of the evidence.
 MANIFEST WEIGHT {¶ 2} Mr. Harrison's assignment of error is that his conviction for aggravated robbery is against the manifest weight of the evidence. When a defendant argues that his conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created *Page 2 
such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten, 33 Ohio App. 3d 339,340 (1986).
 {¶ 3} Mr. Harrison was convicted of violating Section 2911.01(A)(1) of the Ohio Revised Code. That section provides that "[n]o person, in attempting or committing a theft offense . . . shall . . . [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2911.01(A)(1).
 {¶ 4} The Ohio Supreme Court has held that a defendant may be convicted of a principal offense based on proof that he was complicit in its commission. State v. Herring, 94 Ohio St. 3d 246, 251 (2002). This is true even if the indictment does not mention complicity. Id. A defendant may be found guilty if the evidence shows that he "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that [he] shared the criminal intent of the principal." State v. Johnson, 93 Ohio St. 3d 240, syllabus (2001). In this case, the jury received an instruction regarding complicity and found Mr. Harrison guilty of aggravated robbery. Thus, the question is whether the jury clearly lost its way and created a manifest miscarriage of justice in finding either that Mr. Harrison committed the principal offense or was complicit in its commission.
 {¶ 5} Mr. Chapman testified at trial that Mr. Harrison and a juvenile confronted him in the hallway of his rooming house and threatened to go into his room and take what they wanted. According to him, when he refused to unlock his door, Mr. Harrison pulled a gun from his waistband and placed it on a microwave in the hallway. Mr. Chapman said that Mr. Harrison then ordered the juvenile to load it. Mr. Chapman testified that the juvenile pointed the gun at him and waved it around while Mr. Harrison patted down Mr. Chapman's pockets and continued *Page 3 
to try to force him to unlock his door. The confrontation ended in a scuffle between Mr. Harrison and Mr. Chapman. Mr. Chapman managed to escape and lock himself in a nearby bathroom.
 {¶ 6} According to Mr. Chapman, after he heard his attackers leave the building, he called the police. When they arrived, police found Mr. Harrison and the juvenile attending an outdoor party at the apartment building next door to Mr. Chapman's rooming house. The party was hosted by the residents of the apartment building, including Mr. Harrison's cousin. Mr. Chapman identified both men at the scene.
 {¶ 7} Mr. Chapman testified that he had purchased crack cocaine from Mr. Harrison in the past and that, at the time of the incident, he owed Mr. Harrison $15.00 for drugs. He also testified that he had never seen the juvenile before that day. Mr. Harrison admitted at trial that he used to sell crack and that Mr. Chapman owed him $15.00 at the time of this incident. According to him, however, the confrontation was between Mr. Chapman and the juvenile who accompanied Mr. Harrison to Mr. Chapman's rooming house. Mr. Harrison said that Mr. Chapman asked for crack and the juvenile gave Mr. Chapman fake crack, causing Mr. Chapman to become enraged and start a fight. According to Mr. Harrison, he did not have a gun and was not aware that the juvenile had one until he pulled it out and pointed it at Mr. Chapman.
 {¶ 8} Police found a gun under the couch in Mr. Harrison's cousin's apartment. They did not dust it for fingerprints. Mr. Chapman identified it as the one used in the incident. Police also found a bullet in Mr. Harrison's pocket that matched those found in the gun. Mr. Harrison testified that he did not recognize the gun and that the bullet was in his pocket because he picked it up from the floor when it popped out of the gun while the juvenile was loading it at the rooming house. According to Mr. Harrison, he had never been inside his cousin's apartment and *Page 4 
was not inside the apartment on the day of the incident. Mr. Harrison's cousin testified, however, that she saw Mr. Harrison in the hallway of her apartment building that day and that he had been inside her apartment in the past.
 {¶ 9} Based on a review of all the evidence, the jury may have reasonably believed the testimony of Mr. Chapman and Mr. Harrison's cousin over that of Mr. Harrison. Although Mr. Chapman apparently did not tell police that Mr. Harrison initially produced the gun, his trial testimony was not inconsistent with his reports to police. Mr. Chapman consistently reported that the juvenile was waving the gun around and pointing it at him while Mr. Harrison patted down his pockets and tried to get into his room. The State produced evidence tending to show that Mr. Harrison had a gun and displayed it while attempting to commit a theft offense. See R.C. 2911.01(A)(1). Based on that evidence, it was reasonable for the jury to conclude that Mr. Harrison committed aggravated robbery. Even if the jury did not believe that Mr. Harrison initially brandished the gun, it may have reasonably concluded, based on the evidence, that he "supported, assisted, encouraged, cooperated with, advised, or incited [the juvenile] in the commission of the crime," and that Mr. Harrison shared the juvenile's criminal intent.Johnson, 93 Ohio St. 3d at 240. Therefore, this Court cannot say that the jury lost its way and created a manifest miscarriage of justice in finding Mr. Harrison guilty of violating Section 2911.01(A)(1) Ohio Revised Code. See Herring, 94 Ohio St. 3d at 251. Mr. Harrison's assignment of error is overruled.
 CONCLUSION {¶ 10} Mr. Harrison's conviction was not against the manifest weight of the evidence. The judgment of the Summit County Common Pleas Court is affirmed.
 Judgment affirmed. *Page 5 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 CARR, P. J., WHITMORE, J. CONCUR *Page 1