[Cite as *State v. Marrero*, 2011-Ohio-3745.]

STATE OF OHIO      )  
                     )ss:  
COUNTY OF LORAIN    )

IN THE COURT OF APPEALS  
NINTH JUDICIAL DISTRICT

STATE OF OHIO

    Appellee

    v.

TITO MARRERO

    Appellant

C.A. No.     10CA009867

APPEAL FROM JUDGMENT  
ENTERED IN THE  
COURT OF COMMON PLEAS  
COUNTY OF LORAIN, OHIO  
CASE No.    08CR075288

DECISION AND JOURNAL ENTRY

Dated: August 1, 2011

---

WHITMORE, Judge.

{¶1} Defendant-Appellant, Tito Marrero, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms in part and reverses in part.

I

{¶2} Police officers from the Lorain County Police Department developed an interest in an individual named Jose Rodriguez after receiving a tip that he was involved in drug trafficking. Physical surveillance, monitored phone calls, and trash pulls at Rodriguez' residence all confirmed that he was involved in the drug trade. After conducting several months of surveillance, the police executed a search warrant at the residence, just after midnight on January 17, 2008. Marrero, Rodriguez' nephew, arrived at the residence shortly before the police entered. In searching the entire residence, the police opened Marrero's locked duffel bag and found cocaine inside of it. The officer who examined the bag commented upon its opening that the bag looked to contain "almost a key," meaning one kilogram of cocaine. Marrero corrected

the officer, stating "[n]o, it's only about 14," meaning fourteen grams of cocaine. Marrero was handcuffed at the time he made the statement, but had not been read his *Miranda* rights.

{¶3} On February 28, 2008, a grand jury indicted Marrero on the following counts: (1) trafficking in cocaine, in violation of R.C. 2925.01(A)(1); (2) possession of cocaine, in violation of R.C. 2925.11(A); and (3) possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1). On Marrero's motion, the trial court ordered the unsealing of the search warrants upon which the police relied in this matter. On August 8, 2008, Marrero filed a motion to suppress, challenging the search of his duffel bag on the basis that none of the warrants authorized a search of his possessions. The trial court held a suppression hearing and later denied the motion on December 19, 2008.

{¶4} Subsequently, the trial court allowed Marrero to act pro se, but ordered his former counsel to remain on the case in an advisory capacity. Marrero filed another motion to suppress the oral statement he made at the scene. The trial court agreed to consider the motion and held an additional suppression hearing, but ultimately denied the motion on October 15, 2009. Marrero later decided to change his plea and pleaded no contest to all the charges in the indictment. The trial court sentenced him to a total of three years in prison.

{¶5} Marrero now appeals and raises three assignments of error for our review.

II

Assignment of Error Number One

"THE COURT ERRED WHEN IT DENIED THE INITIAL MOTION TO SUPPRESS EVIDENCE FOUND IN DEFENDANT'S DUFFLE (sic) BAG."

{¶6} In his first assignment of error, Marrero argues that the trial court erred by denying his motion to suppress the evidence the police found when they searched his duffel bag. We disagree.

**{¶7}** The Ohio Supreme Court has held that:

"Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8.

Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, at ¶6, citing *Burnside* at ¶8.

**{¶8}** A warrant may issue to "search for and seize any *** contraband, the fruits of crime, or things otherwise criminally possessed[.]" Crim.R. 41(B)(2). Nevertheless, a warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const., Amend. IV. "The manifest purpose of this particularity requirement [is] to prevent general searches." *Maryland v. Garrison* (1987), 480 U.S. 79, 85. "In determining whether a warrant is specific enough, the key inquiry is whether the warrant could reasonably have described the items more precisely." *State v. Overholt*, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶14. "A broad and generic description is valid if it 'is as specific as circumstances and nature of the activity under investigation permit' and enables the searchers to identify what they are authorized to seize." *State v. Armstead*, 9th Dist. No. 06CA0050-M, 2007-Ohio-1898, at ¶10, quoting *United States v. Harris* (1990), 903 F.2d 770, 775.

**{¶9}** The pertinent search warrant in this matter authorized a search of the entire premises, detached garage, and/or any outbuildings present at 1974 E. 33rd Street, Lorain, Ohio.

The warrant included a sizeable list of items to be searched for, including cell phones, pagers, flash drives, certain documents, weapons, "any contraband," and "any drug paraphernalia, knowing the same to be held in or evidence of Ohio Revised Code Section(s): 2925.03; 2925.11[;] 2923.24; 2925.14." The affidavit accompanying the warrant and incorporated therein specified that officers had conducted several months of surveillance on the owner of the residence, Jose Rodriguez, and believed him to be involved in trafficking narcotics. The affidavit also requested search authorization for all other people present at the time of the search because "due to its small size, packaged narcotics and money can be easily transferred from one person to another[.]"

{¶10} Marrero argues that the police lacked authority to search him because the warrant, standing alone, did not authorize the search of all persons present; only the affidavit included that request. He further argues that the police had reason to know of his impending arrival at the time they obtained the warrant and, if they had wanted to search him, they could have provided the court with additional information to include him in the warrant. Because they did not, he argues that *Ybarra v. Illinois* (1979), 444 U.S. 85, applies and the police lacked authority to search him solely on the basis of his proximity to other people suspected of criminal activity.

{¶11} Initially, we note that most of Marrero's argument and all of the case law he cites in support of his argument address "all persons" warrants and the constitutionality of a search of a person who is present when the police execute a warrant, but not included by name or description in the warrant. See, e.g., *Ybarra*, 444 U.S. at 92 (holding that police lacked authority to search Ybarra's person solely on the basis of a warrant authorizing a search of the premises). Marrero's motion to suppress and assignment of error, however, only challenge the search of his duffel bag, and the evidence he sought to suppress came from the search of the duffel bag.

Accordingly, the issue is not whether the police had the authority to search Marrero. It is whether the police had the authority, pursuant to their warrant, to search Marrero's duffel bag.

{¶12} The trial court determined that the police had the authority to search Marrero's duffel bag because the warrant authorized them to search for "all contraband" and the bag could have contained contraband. The court need not have relied upon the "all contraband" language in the warrant, however, because the warrant also authorized a search for cell phones, flash drives, weapons, and the like. See *State v. Redding*, 9th Dist. No. 10CA0018-M, 2010-Ohio-4286, at ¶12 (affirming suppression ruling on other grounds than the trial court). "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *U.S. v. Ross* (1982), 456 U.S. 798, 820-21. Although Marrero's duffel bag was not specifically included in the warrant, the bag easily could have concealed any number of items that were listed in the warrant. See id. Moreover, the bag was on the premises when the police executed the warrant. Compare *State v. Davis* (2000), 140 Ohio App.3d 659 (upholding suppression stemming from evidence the police found in defendant's car after they followed him from an apartment they had a warrant to search, stopped the car absent reasonable suspicion, and searched it absent probable cause). Marrero never disputed that fact and never challenged the validity of the warrant on the basis that it was not supported by probable cause. Compare *Armstead* at ¶8 (involving multiple probable cause challenges to the warrant and affidavit at issue). Marrero has not provided this Court with any authority in support of the conclusion that the search of his duffel bag was unconstitutional. App.R. 16(A)(7). As such, the trial court properly refused to grant Marrero's motion to suppress with regard to the search of the duffel bag. Marrero's first assignment of error is overruled.

Assignment of Error Number Two

"THE COURT ERRED WHEN IT FOUND THAT DEFENDANT'S STATEMENTS WERE ADMISSIBLE."

{¶13} In his second assignment of error, Marrero argues that the trial court erred by denying his motion to suppress the statement he made when the police discovered cocaine inside his duffel bag. Specifically, he argues that he made the statement in the absence of a *Miranda* warning, while in custody, after one of the officers engaged in the functional equivalent of interrogation. We disagree with the proposition that Marrero was "interrogated" at the scene.

{¶14} Because this assignment of error also raises a suppression challenge, we incorporate the standard of review from Marrero's first assignment of error. "Pursuant to the Fifth Amendment of the United States Constitution, no person shall be compelled to be a witness against himself. *** [S]tatements resulting from custodial interrogations are admissible only after a showing that law enforcement officers have followed certain procedural safeguards." *North Ridgeville v. Hummel*, 9th Dist. No. 04CA008513, 2005-Ohio-595, at ¶27, citing *Miranda v. Arizona* (1966), 384 U.S. 436, 444. "Custody" for purposes of entitlement to *Miranda* rights exists only where there is a "'restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler* (1983), 463 U.S. 1121, 1125, quoting *Oregon v. Mathiason* (1977), 429 U.S. 492, 495. "Interrogation" is defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *State v. Knuckles* (1992), 65 Ohio St.3d 494, 496, quoting *Rhode Island v. Innis* (1980), 446 U.S. 291, 301. "[T]he heart of the inquiry focuses on police coercion, and whether the suspect has been compelled to speak by that coercion." *State v. Tucker* (1998), 81 Ohio St.3d 431, 436. "Remarks that are not in

response to any form of interrogation are fully admissible." *State v. Perry* (Oct. 9, 1996), 9th Dist. No. 17754, at *3.

{¶15} There was testimony at the suppression hearing that the police never *Mirandized* Marrero and that he was not free to leave after the police arrived at Rodriguez' residence. Further, the State does not take issue with either the fact that Marrero was not *Mirandized* or that he was in custody at the time he uttered an incriminating statement. Both Marrero and the State focus on whether the police compelled Marrero to make the incriminating statement. Accordingly, we limit our discussion to the issue of interrogation.

{¶16} Lieutenant Roger Watkins testified that when he arrived on the scene Marrero's duffel bag was located on the floor in the entryway bridging the kitchen and living room. Lieutenant Watkins opened Marrero's bag and described himself as being down on one knee, looking into the bag when he saw cocaine inside of it. While looking down at the cocaine, he made a remark about its approximate weight. Lieutenant Watkins testified that he was not directing his statement at anyone in particular and was not aware of Marrero's location at the time he made the statement. Another officer, Officer A.J. Mathewson, was in the room when Lieutenant Watkins remarked about the cocaine's weight. Officer Mathewson confirmed that Lieutenant Watkins was looking down inside the duffel bag when he spoke. Officer Mathewson testified that he believed Lieutenant Watkins to be making a general statement that was not directed at anyone. Officer Geno Taliano, another officer at the scene, also heard Lieutenant Watkins speak and believed his statement to be a general comment. There were approximately eight to ten officers present at Rodriguez' residence for the execution of the warrant. Officer Mathewson was standing next to Marrero, who was seated at the kitchen table, at the time Lieutenant Watkins spoke. All of the officers who testified heard Marrero respond to Lieutenant

Watkins' estimation of the approximate weight of the cocaine by indicating that the bag actually contained a lesser amount.

{¶17} The trial court determined that Marrero spoke in the absence of any interrogation. Marrero argues that Lieutenant Watkins' statement about the approximate weight of the cocaine amounted to the functional equivalent of interrogation because it was designed to elicit a response. Because greater quantities of drugs result in harsher penalties, Marrero argues, a person facing drug charges would not want to be accused of trafficking or possessing a greater amount of drugs than he or she actually did. According to Marrero, Lieutenant Watkins purposely suggested that the duffel bag held more cocaine than it actually did because he hoped Marrero would respond and incriminate himself. This Court previously rejected the same argument in *State v. Smiley*, 9th Dist. No. 23815, 2008-Ohio-1915, at ¶9-15.

{¶18} In *Smiley*, Smiley was placed under arrest after two officers stopped his vehicle and found cocaine in the console. The officers began speaking to one another in Smiley's presence, and one officer remarked that the cocaine looked to weigh "about an ounce." Id. at ¶14. Smiley corrected the officer by stating that the total weight was less than an ounce. He then later sought to suppress his statement on the basis that it was coerced. In rejecting Smiley's argument, we noted that the record did not contain any evidence of coercion, neither of the officers directly questioned Smiley, and there was no evidence that either of the officers should have known that Smiley would make a self-incriminatory statement as a result of their conversation with one another. Id. The same holds true here. Lieutenant Watkins made a single remark about the possible weight of a drug in the presence of other officers. Nothing in the record suggests that he did so to elicit a response from Marrero. He was not facing or looking at Marrero at the time, and he testified that he was not even aware of Marrero's location when he

spoke. Further, both of the officers who heard Lieutenant Watkins' remark considered it to be nothing more than an observation. The record does not support Marrero's assertion that Lieutenant Watkins engaged in the functional equivalent of interrogation. Because Marrero was not compelled to speak, the trial court correctly denied his motion to suppress the incriminating statement he made. Marrero's second assignment of error is overruled.

Assignment of Error Number Three

"THE COURT ERRED WHEN IT REQUIRED DEFENDANT TO REPAY COURT APPOINTED ATTORNEY FEES WITHOUT A FINDING THAT DEFENDANT WAS ABLE TO DO SO."

{¶19} In his third assignment of error, Marrero argues that the trial court erred by ordering him to repay court appointed attorney fees absent a finding that he was financially able to do so. We agree.

{¶20} With regard to court appointed attorneys, the county generally must pay approved fees and expenses. R.C. 2941.51(D). Yet, "if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay." Id. "[A] court must make a determination that the defendant is financially capable of paying for his appointed counsel before assessing court-appointed attorney fees." *State v. Malone*, 9th Dist. No. 09CA009732, 2010-Ohio-5658, at ¶11, quoting *State v. Warner* (Sept. 21, 2001), 9th Dist. No. 96CA006534, at *3.

{¶21} The trial court ordered Marrero to pay $700 in court appointed attorney fees. As was the case in *Malone*, the trial court here did not make any findings on the record, either at the sentencing hearing or in its sentencing entry, that Marrero was financially able to pay attorney fees. See *Malone* at ¶11-12. Further, the State concedes the error. Marrero's third assignment

of error is sustained, and the matter is remanded for a determination of Marrero's ability to pay his court appointed attorney fees.

### III

{¶22} Marrero's first and second assignments of error are overruled. His third assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to both parties equally.

BETH WHITMORE
FOR THE COURT

DICKINSON, J.
BELFANCE, P. J.
CONCUR

APPEARANCES:

ERIN A. DOWNS, Attorney at Law, for Appellant.

DENNIS WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.