[Cite as *State v. Stallworth*, 2011-Ohio-4492.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

MICHAEL A. STALLWORTH

    Appellant

C.A. No.    25461


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 08 07 2256 (B)

DECISION AND JOURNAL ENTRY

Dated: September 7, 2011


WHITMORE, Judge.

{¶1}    Defendant-Appellant, Michael Stallworth, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I

{¶2}    In early July 2008, a confidential informant twice purchased crack cocaine from 1231 Marcy Street on behalf of the Akron Police Department. Although the Marcy Street residence belonged to Katie Mapp, she left the home in the care of her grandson, Stallworth, while she remained in rehabilitative care following a surgery in April 2008. The police obtained search warrants for the residence and executed the warrants on July 9, 2008 after two

individuals, Stallworth and his cousin, Darius Mapp, exited the home on foot. A search of the residence uncovered several firearms, ammunition, and other items of interest, including a glass Pyrex dish, sandwich bags, razor blades, and a digital scale. The police arrested Stallworth and Mapp the same day they executed the warrants. Mapp ultimately pleaded guilty to possession of a firearm and possession of cocaine.

{¶3} On July 24, 2008, a grand jury indicted Stallworth on the following counts: (1) illegal manufacturing of crack cocaine, in violation of R.C. 2925.04(A); (2) possession of criminal tools, in violation of R.C. 2923.24; (3) possession of cocaine, in violation of R.C. 2925.11(A)(C)(4); and (4) having a weapon while under disability, in violation of R.C. 2923.13(A)(3). Stallworth's illegal manufacturing and possession of cocaine counts also contained attendant forfeiture specifications, in violation of R.C. 2941.1417. A jury trial commenced on November 24, 2008. The jury found Stallworth guilty of illegal manufacturing, possession of criminal tools, and having a weapon under disability. The jury further found that Stallworth was not subject to forfeiture for the attendant forfeiture specification linked to his illegal manufacturing charge. On December 9, 2008, the court sentenced Stallworth to five years in prison. It further ordered him to pay the costs of his prosecution. Stallworth appealed from his convictions.

{¶4} This Court remanded the matter to the trial court due to a defective post-release control notification. *State v. Stallworth*, 9th Dist. No. 24541, 2009-Ohio-6080. The trial court conducted Stallworth's resentencing hearing using the video conferencing procedure set forth in R.C. 2929.191. In its May 27, 2010 resentencing entry, the court ordered Stallworth to pay both the costs of his prosecution and his attorney fees.

**{¶5}** Stallworth now appeals from his convictions and raises six assignments of error for our review. For ease of analysis, we rearrange and consolidate several of the assignments of error.

II

Assignment of Error Number Five

"THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT OVERRULED DEFENDANT'S CRIM. R. 29(A) MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."

**{¶6}** In his fifth assignment of error, Stallworth argues that his convictions for illegal manufacturing, possession of criminal tools, and having a weapon under disability are based on insufficient evidence. He argues that the State failed to link him to any of the evidence found at the Marcy Street residence. We disagree.

**{¶7}** In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, 274. Furthermore:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386.

"In essence, sufficiency is a test of adequacy." *Thompkins*, 78 Ohio St.3d at 386.

**{¶8}** R.C. 2925.04(A) provides that "[n]o person shall *** knowingly manufacture or otherwise engage in any part of the production of a controlled substance." Crack cocaine is a controlled substance. R.C. 3719.01(C); R.C. 3719.41. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will

probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶9} R.C. 2923.24(A) provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). A violation of R.C. 2923.24 constitutes the crime of possessing criminal tools. R.C. 2923.24(C).

{¶10} Finally, R.C. 2923.13(A)(3) provides, in relevant part, that "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if ***: [t]he person *** has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse[.]" A violation of the foregoing section constitutes the crime of having a weapon while under disability. R.C. 2923.13(B). Stallworth stipulated at trial that he had a prior conviction for the attempted possession of cocaine.

{¶11} Detective Tim Harvey testified that a confidential informant for the Akron Police Department purchased crack cocaine from 1231 Marcy Street on two occasions in early July 2008. Darius Mapp was the focus of the investigation because, both times, he was the individual who sold the crack cocaine to the informant. The day the police executed their warrants, however, Stallworth exited the Marcy Street residence with Mapp. Moreover, a search of the residence uncovered multiple items belonging to Stallworth.

{¶12} Detective Chris Carney testified that he searched the northeast bedroom of the Marcy Street residence on the day the police executed their warrants. Inside the bedroom,

Detective Carney found a digital scale, razor blades, sandwich bags, used shooting targets, ammunition, and a .40 caliber Hi-Point assault rifle. Detective Carney testified that both razor blades and sandwich bags are items used to manufacture crack cocaine. Specifically, razor blades are used to cut crack into individual portions and sandwich bags are used to wrap the portions for sale. Detective Carney testified that the digital scale he found in the bedroom was coated with a white residue and had small cut marks on the top of it. He explained that crack cocaine dealers commonly cut their product with a razor blade while it is resting on a scale so as to ensure an accurate weight. Next to the digital scale, Detective Carney found a laptop and a laptop bag. He testified that the laptop was plugged in and running. The laptop bag contained numerous documents belonging to Stallworth, including documents from the Ohio Bureau of Workmen's Compensation, several gun magazines, and a letter addressed to him at the Marcy Street address. The search of the dresser in the bedroom also uncovered multiple letters addressed to Stallworth at the Marcy Street address, letters addressed to Stallworth at a different address, a court receipt belonging to Stallworth, and several pictures of Stallworth.

{¶13} As to the firearm-related items found in the northeast bedroom, Detective Carney testified that there were three shooting targets, all of which had bullet holes and one of which was displayed on the wall. Detective Carney later spoke to Darius regarding the ownership of the rifle found in the bedroom and another firearm found in the living room. He testified that Darius admitted to owning the firearm the police found in the living room, but not the rifle. With regard to the rifle, Darius told Detective Carney that Stallworth needed to "man up" and admit to owning it. Katie Mapp, Stallworth's grandmother, later testified and disclaimed any knowledge of the rifle. According to Mapp, she gave Stallworth the key to her house so that he could care for her pets while she was away. She also denied owning the digital scale the police found in the

northeast bedroom and a glass, Pyrex bowl they found in the kitchen. Detective Harvey testified that the bowl contained a white, powdery residue that tested positive for cocaine. Detective Harvey explained that powder cocaine can be cooked in a glass container, like the one found, to transform it into crack cocaine. He testified that the police routinely find Pyrex dishes in places where crack cocaine has been manufactured.

{¶14} Stallworth does not challenge the presence of any particular element of his convictions. In essence, Stallworth argues that the State failed to prove its case because the police did not find any DNA or fingerprint evidence linking him to any of the items they found at the Marcy Street home. According to Stallworth, the police only assumed his involvement based on the presence of a few of his personal items and their proximity to the rifle and other evidence the police uncovered. Stallworth maintains that Darius Mapp acted alone in engaging in any criminal activity.

{¶15} While the evidence against Stallworth was circumstantial in nature, "[c]ircumstantial evidence and direct evidence inherently possess the same probative value[.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. The police uncovered numerous personal items of Stallworth's in the same bedroom as the rifle, digital scale, razor blades, and sandwich bags. There was testimony that all of the latter items, save the rifle, are used in the crack cocaine manufacturing process. An informant also purchased crack cocaine from the residence on two occasions, just days before the police executed their warrant. Stallworth left the Marcy Street home directly before the police executed the warrant, and Katie Mapp testified that she entrusted her key to Stallworth several months before the search. She also testified that she did not own the rifle or digital scale the police uncovered in the northeast bedroom along with Stallworth's

personal items. Darius also disclaimed ownership of the rifle, indicating that Stallworth needed to "man up" and admit that it belonged to him.

{¶16} Viewing all the evidence in a light most favorable to the State, the jury could have determined both that Stallworth owned the items the police found in the northeast bedroom and that he was using the drug-related items to manufacture crack cocaine. Further, the record reflects that the jurors were given a complicity instruction. Thus, even if Darius Mapp was primarily responsible for the drug-related activity occurring at the Marcy Street residence, the jury could have determined that Stallworth aided and abetted him. See *State v. Harrison*, 9th Dist. Nos. 24031 & 24034, 2008-Ohio-6612, at ¶9. As such, we cannot say that Stallworth's convictions for illegal manufacturing, possession of criminal tools, and having a weapon under disability are based on insufficient evidence. Stallworth's fifth assignment of error lacks merit.

<u>Assignment of Error Number Four</u>

"DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE."

{¶17} In his fourth assignment of error, Stallworth argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶18} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the

evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175; see, also, *Otten*, 33 Ohio App.3d at 340.

{¶19} Stallworth combined his sufficiency and weight arguments in the body of his brief. Therefore, his weight argument is also that all of the evidence tended to show that Darius Mapp was responsible for any criminal activity that took place at the Marcy Street residence. The jury heard testimony, however, that the police found numerous personal effects belonging to Stallworth in a bedroom alongside drug-related items, including a digital scale, razor blades, and baggies. There also is no dispute that: an informant purchased crack cocaine from the Marcy Street residence within several days of Stallworth's arrest; Stallworth was entrusted with the key to the residence; he was with Darius at the house on the day the police executed their warrants; and the house contained firearms and drug-related items, linked to manufacturing. Katie Mapp, the owner of the home, testified that she did not own the .40 caliber rifle, digital scale, or other related items found in the home. It was within the jury's province to reject Stallworth's claims that none of the items were his and that he was not involved in any of the criminal activity that took place at the Marcy Street residence. See *State v. Hoang*, 9th Dist. No. 09CA0061-M, 2010-Ohio-6054, at ¶16-17 (rejecting manifest weight argument arising from defendant's claim that he merely associated with other individuals involved in illegal manufacturing). Based on our review of the record, we cannot say that this is the exceptional case where the jury lost its way. See, e.g., *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, at ¶35, quoting *State v. Morten*, 2d Dist. No. 23103, 2010-Ohio-117, at ¶28 (concluding that "[t]he jury *** 'did not lose its way

simply because it chose to believe the State's version of the events'"). Stallworth's argument that his convictions are against the manifest weight of the evidence lacks merit. His fourth assignment of error is overruled.

Assignment of Error Number Six

"THE COURT COMMITTED REVERSIBLE ERROR AND PLAIN ERROR WHEN IT ALLOWED INTO EVIDENCE PHOTOS OF MR. STALLWORTH TAKEN WHILE HE WAS IN PRISON UNIFORM."

{¶20} In his sixth assignment of error, Stallworth argues that the trial court committed plain error when it permitted the State to introduce photographs that depicted him in a prison uniform. We disagree.

{¶21} "When a defendant fails to contemporaneously object to the *** publication of photographs to the jury, and only later objects, after the close of the State's evidence when the photographs are being admitted into evidence, he forfeits the matter for review on appeal." *State v. Sykes*, 9th Dist. No. 25263, 2011-Ohio-293, at ¶8. "Forfeiture precludes the consideration of all but plain error under Crim.R. 52(B)." *State v. Ricks*, 9th Dist. No. 09CA0094-M, 2010-Ohio-4659, at ¶13.

> "To correct a plain error, all of the following elements must apply: 'First, there must be an error, i.e., a deviation from the legal rule. *** Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. *** Third, the error must have affected 'substantial rights[]' [to the extent that it] *** affected the outcome of the trial.'" *State v. Hardges*, 9th Dist. No. 24175, 2008-Ohio-5567, at ¶9, quoting *State v. Barnes* (2002), 94 Ohio St.3d 21, 27.

"Courts are to notice plain error 'only to prevent a manifest miscarriage of justice.'" *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶16, quoting *State v. Long* (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.

{¶22} The State introduced four Polaroid photographs of Stallworth at trial. Detective Carney referred to the photographs as "jail photos," and they were briefly displayed for the jury.

Detective Joseph Danzy testified that he found the photographs inside one of the dresser drawers in the northeast bedroom. The State introduced the photographs at the same time that it introduced all of the other items of personal property the police found in the northeast bedroom. Stallworth does not deny that the photographs had probative value. Specifically, they tended to rebut Stallworth's argument at trial that he was not living in the northeast bedroom of the Marcy Street residence and only visited the residence periodically to care for his grandmother's pets.

{¶23} Stallworth argues that the trial court committed plain error by admitting the photographs because they were substantially more prejudicial than probative. Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." According to Stallworth, he suffered substantial prejudice as a result of the jurors seeing the photographs because they depicted him in a prison uniform and undermined the presumption of his innocence.

{¶24} Only one of the four photographs the State introduced actually depicts Stallworth in a prison uniform. The picture is set against an artificial backdrop of a mountainous region. Moreover, it is not readily apparent from the picture that Stallworth is wearing a prison uniform, as much of his torso is blocked from view by the small child and female who appear in the photograph with him. The remaining pictures depict Stallworth standing against a blank wall wearing a white, sleeveless shirt, pants, and shoes. It is not clear that the jurors would even have associated any of the photographs with Stallworth's incarceration, absent the testimony referring to the photographs as "jail photos." More importantly, the jury was aware that Stallworth had a prior conviction for the attempted possession of cocaine. Stallworth stipulated to his prior conviction, his attorney referred to his prior conviction in his opening statement, and the jury

received a redacted version of the judgment entry from that case. See *State v. Garrett*, 5th Dist. No. 03-CA-49, 2004-Ohio-2231, at ¶41 (concluding that it was, at most, harmless error for the defendant to attend trial in shackles and prison attire because "the jury was already aware that [he] was a prisoner"); *State v. Powers* (1995), 106 Ohio App.3d 696, 700-01, quoting *State v. Chitwood* (1992), 83 Ohio App.3d 443, 449 (noting that, because they jury was told the defendant previously had been convicted of the same violent crime for which he was on trial, "the possibility of any prejudice inuring to him as a result of a brief viewing in shackles *** became extremely remote"). At most, the photographs confirmed that Stallworth was incarcerated at some point for his prior conviction.

{¶25} Stallworth makes no attempt to explain how he incurred any additional prejudice as a result of the admission of the photographs when the jury was already aware, based on his stipulation, that he had a prior conviction for a drug-related offense. See App.R. 16(A)(7). We are not persuaded by his argument that this situation is analogous to one where a defendant is compelled to stand trial in prison clothing or physical restraints. Compare *Deck v. Missouri* (2005), 544 U.S. 622, 630 ("Visible shackling undermines the presumption of innocence and the related fairness of the factfinding process."); *Estelle v. Williams* (1976), 425 U.S. 501, 512-13 (recognizing constitutional concerns associated with compelling a defendant to stand trial "while dressed in identifiable prison clothes"). The jury viewed the photographs briefly and only after learning that Stallworth had a prior conviction. The record does not support the conclusion that the admission of the photographs created a manifest miscarriage of justice. See *Payne* at ¶16. Consequently, the trial court did not commit plain error by admitting them. Stallworth's sixth assignment of error is overruled.

<u>Assignment of Error Number Three</u>

"[THE] TRIAL COURT COMMITTED REVERSIBLE ERROR AND PLAIN ERROR IN DENYING MR. STALLWORTH HIS RIGHT TO BE REPRESENTED BY COUNSEL AT THE RESENTENCING HEARING."

{¶26} In his third assignment of error, Stallworth argues that the trial court violated his Sixth Amendment right to counsel by refusing to appoint him counsel for purposes of his post-release control resentencing. We disagree.

{¶27} A trial court shall apply the procedures contained in R.C. 2929.191 to remedy any post-release control error occurring in a sentence imposed on or after July 11, 2006. *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, paragraph two of the syllabus. R.C. 2929.191 requires a trial court to hold a hearing before issuing a corrected sentencing entry. R.C. 2929.191(C) provides, in relevant part, as follows:

> "Before a court holds a hearing pursuant to this division, the court shall provide notice of the date, time, place, and purpose of the hearing to the offender who is the subject of the hearing, the prosecuting attorney of the county, and the department of rehabilitation and correction. The offender has the right to be physically present at the hearing, except that, upon the court's own motion or the motion of the offender or the prosecuting attorney, the court may permit the offender to appear at the hearing by video conferencing equipment if available and compatible. An appearance by video conferencing equipment pursuant to this division has the same force and effect as if the offender were physically present at the hearing. At the hearing, the offender and the prosecuting attorney may make a statement as to whether the court should issue a correction to the judgment of conviction."

The statute itself makes no reference to an attorney appearing on behalf of the defendant at the resentencing hearing.

{¶28} Stallworth appeared at his R.C. 2929.191 hearing by way of video conference. He did not have an attorney representing him at the hearing. When he indicated that he would like to have his former appointed counsel present, the trial judge informed him that she was not required to appoint him counsel for purposes of the R.C. 2929.191(C) hearing. Stallworth argues

that the trial court erred in its determination. See Crim.R. 44(A) (providing that, absent a waiver, "[w]here a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right").

{¶29} Several other district courts have rejected the argument that a trial court is required to appoint counsel for purposes of a post-release control resentencing hearing. See *State v. Griffis*, 5th Dist. No. CT2010-57, 2011-Ohio-2955, at ¶24-34 (holding that imposition of post-release control at resentencing was a ministerial act and the defendant did not suffer any prejudice as a result of not having counsel there); *State v. Walker*, 11th Dist. No. 2009-L-170, 2011-Ohio-401, at ¶28-29 (rejecting defendant's argument that he was unconstitutionally deprived of counsel at resentencing hearing because his post-release control term was mandatory, the hearing was limited to its imposition, and R.C. 2929.191 "does not provide *** [for the] right to be represented by counsel *** at the hearing"); *State v. Davis*, 4th Dist. No. 10CA9, 2010-Ohio-5294, at ¶2 (holding that defendant's right to counsel was not violated at the resentencing hearing because it was "ministerial" and "not a 'critical stage' of the proceedings"). This view comports with the Supreme Court's treatment of post-release control errors. See, e.g., *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, at ¶29-30 (recognizing that even appellate courts have the authority to correct a post-release control defect in the absence of a remand for resentencing because no sentencing discretion exists). It also comports with the fundamental understanding that the right to counsel exists to protect an "accused's right to a fair trial." *U.S. v. Wade* (1967), 388 U.S. 218, 226. Post-release control defects do not affect the merits of a defendant's underlying conviction or the lawful elements of his existing sentence. *Fischer* at paragraph three of the syllabus. Stallworth has not explained how the absence of counsel at a

post-release control resentencing would negatively impact a defendant's fair trial rights. See App.R. 16(A)(7). He also has not explained how he was prejudiced by the absence of counsel at his resentencing, as the record reflects that the resentencing resulted in the proper imposition of post-release control. Id.

{¶30} Absent any argument or authority to the contrary, we decline to adopt Stallworth's unsupported position that a trial court is required to appoint a defendant counsel for purposes of a post-release control resentencing. Stallworth's argument that the trial court erred by refusing to appoint him counsel for his post-release control resentencing hearing lacks merit. His third assignment of error is overruled.

Assignment of Error Number One

"THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ASSESSING COURT COSTS AGAINST DEFENDANT WITHOUT COMPLYING WITH R.C. 2947.23(A)."

{¶31} In his first assignment of error, Stallworth argues that the trial court erred by assessing court costs against him after failing to notify him, at the time of sentencing, that he would be responsible for costs. We agree.

{¶32} "R.C. 2947.23 mandates that the trial court assess the cost of prosecution against a convicted criminal defendant." *State v. Payne*, 9th Dist. No. 21178, 2003-Ohio-1140, at ¶15. Yet, a trial court must orally inform a defendant of his obligation to pay costs at the time of sentencing so as to give the defendant an opportunity to claim indigency and seek a waiver of payment. *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, at ¶22. A trial court commits reversible error when it imposes costs against a defendant in the absence of such a notification. Id. The appropriate remedy for such an error is a "remand *** to the trial court for the limited purpose of allowing [the defendant] to move the court for a waiver of the payment of court costs." Id. at ¶23.

**{¶33}** Here, the trial court assessed costs against Stallworth, but failed to notify him, at the time of sentencing, that there would be an assessment of costs. Stallworth is correct in his assertion that he was not given the opportunity to seek a waiver of costs. Accordingly, we remand the matter in accordance with *Joseph* for the "limited purpose of allowing [Stallworth] to move the court for a waiver of the payment of court costs." Id. Stallworth's first assignment of error is sustained on that basis.

Assignment of Error Number Two

"THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ASSESSING ATTORNEY FEES AGAINST DEFENDANT WITHOUT COMPLYING WITH R.C. 2941.51(D)."

**{¶34}** In his second assignment of error, Stallworth argues that the trial court erred when it ordered him to pay his court-appointed attorney fees.

**{¶35}** R.C. 2941.51(D) allows a trial court to order a defendant to pay some or all of his court-appointed attorney fees after finding that the defendant is financially capable of doing so. *State v. Marrero*, 9th Dist. No. 10CA009867, 2011-Ohio-3745, at ¶20. Here, however, the trial court did not order Stallworth to pay attorney fees in its original sentencing entry. The original sentencing entry only contained an order to pay costs. The trial court added the order to pay attorney fees to the nunc pro tunc sentencing entry it issued pursuant to R.C. 2929.191. Yet, R.C. 2929.191 only permits a trial court to correct a post-release control defect. *Singleton* at ¶23-24 (concluding that R.C. 2929.191 hearings and corrections "pertain only to the flawed imposition of post[-]release control" while a defendant's remaining sanctions remain undisturbed). It does not allow a trial court to conduct a de novo sentencing or impose additional sanctions upon a defendant, as if the defendant were being sentenced for the first time. Id. See, also, *Fischer* at ¶27 (holding that, when a trial court remedies a post-release control error, "only

the offending portion of the sentence is subject to review and correction"). The State concedes that the trial court here only had the authority to correct Stallworth's post-release control defect.

{¶36} The record reflects that the trial court exceeded its authority when it ordered Stallworth to pay his court-appointed attorney fees in the sentencing entry it issued pursuant to R.C. 2929.191. The scope of the resentencing was limited to the proper imposition of post-release control, and the court lacked jurisdiction to modify Stallworth's original sentence. See *State v. Martin*, 9th Dist. No. 10CA0007, 2010-Ohio-5394, at ¶11-12. Accordingly, the post-release control portion of the court's May 27, 2010 sentencing entry is affirmed, but the remainder of the entry is vacated as it constitutes a nullity. *State v. Cool*, 9th Dist. Nos. 25135 & 25214, 2011-Ohio-1560, at ¶5. Stallworth's original sentence remains intact. Id. To the extent Stallworth argues that the trial court erred by assessing attorney fees against him, his assignment of error is sustained.

## III

{¶37} Stallworth's first and second assignments of error are sustained for the reasons set forth above. His remaining assignments of error are overruled. The trial court's May 27, 2010 sentencing entry is vacated with the exception of the post-release control portion of the entry. Stallworth's original sentencing entry remains valid, but the matter is remanded to afford Stallworth the opportunity to seek a waiver of the payment of court costs. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

---

BETH WHITMORE
FOR THE COURT

DICKINSON, J.
CONCURS

BELFANCE, P. J,
CONCURS, SAYING:

{¶38} I concur. I write separately to briefly address Mr. Stallworth's sixth assignment of error. In certain contexts, the introduction of a defendant's prison photographs can be highly prejudicial and could rise to the level of plain error, even if the defendant has stipulated to a prior conviction. However, I agree with the majority's holding in light of the specific facts of this case.

{¶39} In the instant matter, absent the comment by the detective referring to the photos as "jail photos[,]" it would be unlikely that anyone would even suspect that the photographs were taken of Mr. Stallworth while he was in prison. Thus, I cannot say that introduction of the photographs themselves constituted plain error. Instead, it appears that what Mr. Stallworth is really challenging the introduction of the photographs in conjunction with the testimony of the detective who characterized those photos as "jail photos[.]" However, Mr. Stallworth has not asserted error with respect to the detective's testimony. Instead, he has limited his argument to the introduction of the photographs. Thus, I agree that Mr. Stallworth's sixth assignment of error is properly overruled.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.