[Cite as *State v. Miller*, 2012-Ohio-1263.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

BOHANNON R. MILLER

    and

AVERY J. TAYLOR

    Appellants

C.A. Nos.    10CA009922
                10CA009915

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.    10CR080022
                10CR080025

DECISION AND JOURNAL ENTRY

Dated: March 26, 2012

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellants, Avery Taylor and Bohannon Miller, appeal from their convictions in the Lorain County Court of Common Pleas. This Court affirms in part and reverses in part.

I

{¶2} On January 13, 2010, both Taylor and Miller were involved in an automobile collision with Eric Echols and his two passengers. Echols fled the scene after the accident and brought the matter to the attention of the Lorain Police Department. The matter ultimately was reviewed by the police department's gang task force, as both Taylor and Miller were believed to be gang members affiliated with the Southside gang in Lorain. The police received information that Taylor stole the car that was involved in the collision with Echols and that the collision may

have been an intentional, retaliatory attack that stemmed from Taylor and Miller's Southside gang membership and Echols' affiliation with the Westside.

{¶3} On February 19, 2010, a grand jury indicted Taylor on the following counts: (1) felonious assault, in violation of R.C. 2903.11(A)(2); (2) participating in a criminal gang, in violation of R.C. 2923.42(A); and (3) receiving stolen property, in violation of R.C. 2913.51(A). Taylor's felonious assault charge also contained an attendant specification for committing a felony offense of violence while participating in a criminal gang. Additionally, a fourth charge for participating in a criminal gang, in violation of R.C. 2923.42(A), was added by supplemental indictment on July 1, 2010. The State later dismissed the count for participating in a criminal gang that was charged in the original indictment.

{¶4} Miller also was indicted on February 19, 2010, on the following two counts: (1) felonious assault, in violation of R.C. 2903.11(A)(2); and (2) participating in a criminal gang, in violation of R.C. 2923.42(A). Miller's felonious assault charge also contained an attendant specification for committing a felony offense of violence while participating in a criminal gang. Additionally, a third charge for participating in a criminal gang, in violation of R.C. 2923.42(A), was added by supplemental indictment on July 1, 2010. The State later dismissed the count for participating in a criminal gang that was charged in the original indictment.

{¶5} Taylor and Miller's cases were joined for trial, and a jury trial began on August 24, 2010. At the conclusion of the trial, the jury found Taylor guilty of felonious assault, receiving stolen property, and participating in a criminal gang, but not guilty of the specification to count one. The jury found Miller guilty of participating in a criminal gang, but not guilty of felonious assault and its attendant specification. The trial court sentenced Taylor to a total of fifteen years in prison and sentenced Miller to eight years in prison.

**{¶6}** Taylor and Miller now appeal from their convictions and collectively raise twenty-three assignments of error for our review. Because many of their assignments of error are interrelated, we have consolidated the cases for purposes of entering judgment. Additionally, for ease of analysis, the assignments of error have been rearranged and many have been consolidated.

II

Taylor's Assignment of Error Number Two

THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY
NOT RULING IN FAVOR OF APPELLANT'S MOTION TO DISMISS
PURSUANT TO THE APPELLANT'S RIGHT TO A SPEEDY TRIAL.

**{¶7}** In his second assignment of error, Taylor argues that the trial court erred by failing to grant his motion to dismiss due to a speedy trial violation. We disagree.

**{¶8}** "The right of an accused to a speedy trial is recognized by the Constitutions of both the United States and the state of Ohio." *State v. Pachay*, 64 Ohio St.2d 218, 219 (1980). Ohio's speedy trial statute provides that a person charged with a felony must be brought to trial within two hundred seventy days of his arrest. R.C. 2945.71(C)(2). Yet, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). Accordingly, if a person charged with a felony remains in jail in lieu of posting bond, that person must be brought to trial within ninety days of his arrest. *Id.* "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." R.C. 2945.73(B). Under certain conditions, however, the time within which an accused must be brought to trial can be tolled. *State v. Dalton*, 9th Dist. No. 09CA009589, 2009-Ohio-6910, ¶ 21. Speedy trial time can be tolled for "[a]ny period of delay

necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(E). Additionally, speedy trial time can be tolled for "[a]ny period of delay necessitated by the accused's lack of counsel," "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(C), (H).

{¶9} Taylor was arrested on January 13, 2010, so his speedy trial time began to run on January 14, 2010. *See State v. Browand*, 9th Dist. No. 06CA009053, 2007-Ohio-4342, ¶ 12 ("Time is calculated to run the day after the date of arrest."). He posted bond and was released on January 21, 2010; a total of 24 days later for speedy trial purposes. *See* R.C. 2945.71(E) (setting forth the speedy trial triple-count provision). He was then arrested again 32 days later on February 22, 2010, after the filing of his indictment. At that point, a total of 56 days had elapsed. Because Taylor remained in jail from that point forward, R.C. 2945.71's triple-count provision applied to the remainder of his time calculations absent some tolling event. R.C. 2945.71(E).

{¶10} On March 5, 2010, Taylor appeared before the court without counsel. The court issued an entry charging Taylor with a one-day delay and indicating that counsel would be appointed. Subsequently, on March 17, 2010, Taylor's appointed counsel filed a motion for a bond reduction as well as a request for discovery and a bill of particulars. Those filings stopped Taylor's speedy trial clock as they constituted tolling events. *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, syllabus. The speedy trial time that elapsed from February 23, 2010, to March 17, 2010, (minus the tolling event) was 66 days. As of March 17, 2010, therefore, 122 days had elapsed.

{¶11} The court denied Taylor's bond reduction request on April 23, 2010, and the State provided Taylor with both discovery and a bill of particulars on June 3, 2010. Taylor argues on

appeal that the court's delay in ruling upon his bond reduction request was excessive and amounted to an unreasonable tolling event. He does not argue, however, that the State unreasonably delayed in responding to his request for discovery or bill of particulars. Moreover, the record does not support any implication that the State's delay here was due to procrastination or inattention. *See Brown* at ¶ 24, quoting *State v. Ladd*, 56 Ohio St.2d 197, 200 (1978) ("The rationale supporting [the speedy-trial statute] was to prevent inexcusable delays caused by indolence within the judicial system.") (Alteration sic.) The prosecutor indicated that his office was struggling to provide discovery and a bill of particulars here, as Taylor had been indicted along with 29 others. There also was a great deal of discussion in the court below about R.C. 2923.42's application because neither the court nor the attorneys were familiar with the gang statute. In the absence of any argument on Taylor's part, we will not conclude that the State's delay in responding to Taylor's demand for discovery and a bill of particulars was unreasonable. *See* App.R. 16(A)(7). The speedy trial clock was tolled from March 17, 2010, to June 3, 2010, the date when the State responded to Taylor's demands. *See Brown* at ¶ 26. The issue of whether the trial court unreasonably delayed in responding to the bond reduction is moot, as that time overlapped with the time tolled as a result of Taylor's filing his demands for discovery and a bill of particulars. From March 17, 2010, to June 3, 2010, Taylor's speedy trial time was tolled and the speedy trial count remained at 122 days having elapsed.

{¶12} On June 9, 2010, Taylor filed a motion to dismiss his indictment, arguing that it was defective. The motion to dismiss constituted another tolling event. *State v. Daniels*, 9th Dist. No. 08CA009488, 2009-Ohio-1712, ¶ 13. From June 3, 2010, to June 9, 2010, 21 days elapsed for speedy trial purposes. The trial court then denied the motion on June 30, 2010, and restarted the speedy trial clock. The total time elapsed as of June 30, 2010, was 143 days.

{¶13} On July 7, 2010, Taylor filed a pro se motion to reduce his bond, which the court denied on July 15, 2010. That motion also acted as a tolling event. *State v. Szorady*, 9th Dist. No. 02CA008159, 2003-Ohio-2716, ¶ 14 (holding that defendant's pro se motion to dismiss was a tolling event). Thereafter, no tolling events occurred until August 2, 2010, when Taylor's counsel asked the court to continue the trial until August 24, 2010, so that the defense would have time to obtain an expert report from their accident reconstructionist. *See* R.C. 2945.72(H) (identifying as a tolling event any "period of continuance granted on the accused's own motion"). The speedy trial time that elapsed from June 30, 2010, to July 7, 2010, combined with the time that elapsed from July 15, 2010, to August 2, 2010, was 81 days. The total speedy trial time that elapsed from Taylor's arrest until his trial was 224 days, well under the 270 days within which the State was required to bring Taylor to trial. *See* R.C. 2945.71(C)(2).

{¶14} In addition to the argument outlined above, Taylor argues that the trial court erred by denying his motion to dismiss because it factored the three days it took him to respond to the State's demand for discovery into its count. Taylor argues that because he responded within a reasonable time, it was improper to count that response time as a tolling event. Any error the court committed with regard to that event was harmless, however, as the foregoing calculations indicate that the State brought Taylor to trial well within his speedy trial time and those calculations did not rely upon Taylor's response time as a tolling event. *See* Crim.R. 52(A).

{¶15} Lastly, Taylor argues his motion to dismiss had merit because his speedy trial time had already elapsed when the State filed its supplemental indictment. The State filed its supplemental indictment here on July 1, 2010. The supplemental indictment did not set forth any additional charges based on different circumstances. Rather, it clarified count two of the original indictment (participating in a criminal gang) in response to Taylor's assertion that the indictment

was defective.  The State later dismissed the original count in favor of the more specific language contained in the supplemental indictment.  Because the supplemental indictment arose from the same facts and did not charge an additional offense, it was subject to the same speedy trial period applicable to the original indictment.  *State v. Baker*, 78 Ohio St.3d 108, 110-111 (1997).  Further, because Taylor's speedy trial time did not elapse here, his argument that the court erred by not dismissing the supplemental indictment is meritless.  Taylor's second assignment of error is overruled.

<u>Miller's Assignment of Error Number Three</u>

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO TRY APPELLANT AND HIS CO-DEFENDANT IN THE SAME TRIAL.

{¶16}  In his third assignment of error, Miller argues that the trial court committed plain error when it failed to sever his case from Taylor's for purposes of trial.  We disagree.

{¶17}  "It is well-settled that the law favors joinder."  *State v. Merriweather*, 9th Dist. No. 97CA006693, 1998 WL 239773, *3 (May 6, 1998).  Crim.R. 14 permits the joinder of "completely separate indictments."  *State v. Hatfield*, 9th Dist. No. 23716, 2008-Ohio-2431, ¶ 14.  "A defendant claiming prejudice by the joinder of offenses may move for severance under Crim.R. 14."  *Merriweather* at *3.  "If it appears that a defendant * * * is prejudiced by a joinder of * * * defendants * * * for trial together * * *, the court shall * * * grant a severance of defendants, or provide such other relief as justice requires."  Crim.R. 14.  To preserve a claimed error under Crim.R. 14, however, a defendant must renew his or her motion to sever either at the close of the State's case or at the conclusion of all of the evidence.  *State v. Owens*, 51 Ohio App.2d 132, 146 (9th Dist.1975).  The failure to do so "results in a forfeiture of the issue on appeal."  *State v. Vu*, 9th Dist. No. 11CA0042-M, 2012-Ohio-746, ¶ 37.

{¶18} Miller and Taylor were indicted separately, but their separate cases were joined for trial. Miller concedes that he forfeited his severance argument because he never objected to the joinder. Accordingly, he argues that the court committed plain error here. *See State v. Sadler*, 9th Dist. No. 23256, 2006-Ohio-6910, ¶ 5-7. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "A defendant claiming error * * * under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced * * *." *State v. Patel*, 9th Dist. No. 24024, 2008-Ohio-4692, ¶ 52, quoting *State v. Torres*, 66 Ohio St.2d 340 (1981), syllabus.

{¶19} Miller acknowledges that his felonious assault charge and Taylor's felonious assault charge stemmed from the same transaction and evidence, but argues that a joint trial prejudiced his defense because it bolstered the State's position that he and Taylor were fellow gang members. Specifically, he argues that it is inherently prejudicial for defendants to be "tried together for an alleged gang affiliation." Yet, "merely a risk of injustice[] is insufficient" to demonstrate actual prejudice as a result of joinder. *State v. Groce-Hopson*, 9th Dist. No. 03CA008377, 2004-Ohio-2949, ¶ 13. Miller and Taylor were charged with identical offenses with the exception of Taylor's one additional charge for receiving stolen property. Their felonious assault charges stemmed from the same incident and also were offenses upon which the State relied to prove their gang charges. Moreover, Miller and Taylor were both involved in a 2007 incident that formed part of the basis for their gang charges. Miller and Taylor did not implicate one another at trial or testify on their own behalves so as to create a possible *Bruton*

problem. *Id.* at ¶ 15, citing *Bruton v. United States*, 391 U.S. 123, 132 (1968). Miller has not pointed this Court to any evidence of actual prejudice that occurred here as a result of the joinder of the trials. *See Patel* at ¶ 52. Accordingly, we conclude that his argument lacks merit. Miller's third assignment of error is overruled.

Taylor's Assignment of Error Number Four

THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY TRYING HIM FOR FELONIOUS ASSAULT AND PARTICIPATING IN A CRIMINAL GANG AT THE SAME TRIAL AS TRYING THESE TWO CHARGES TOGETHER WAS HIGHLY PREJUDICIAL.

Miller's Assignment of Error Number Two

THE TRIAL COURT ERRED IN TRYING APPELLANT FOR FELONIOUS ASSAULT AND PARTICIPATING IN A CRIMINAL GANG IN THE SAME TRIAL.

**{¶20}** In Taylor's fourth assignment of error and Miller's second, they argue that the trial court erred by failing to sever their felonious assault charges from their charges for participating in a criminal gang. We disagree.

**{¶21}** "The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.'" *State v. Lott*, 51 Ohio St.3d 160, 163 (1990), quoting Crim.R. 8(A). "[T]he jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated." *Torres*, 66 Ohio St.2d at 343.

> A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial.

*Id.* at syllabus. "Joinder may be prejudicial when the offenses are unrelated and the evidence as to each is very weak * * *, but [not] when the evidence is direct and uncomplicated and can

reasonably be separated as to each offense." *Id.* at 343-344. *Accord State v. Rucker*, 9th Dist. No. 25081, 2010-Ohio-3005, ¶ 42. This Court reviews a trial court's denial of a motion to sever charges for an abuse of discretion. *State v. Turner*, 9th Dist. No. 24709, 2009-Ohio-6613, ¶ 5. An abuse of discretion implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶22} "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Wigle*, 9th Dist. No. 25593, 2011-Ohio-6239, ¶ 22, quoting *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992). "If the evidence of other crimes would be admissible at separate trials, any prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials, and a court need not inquire further." (Internal quotations omitted.) *Schaim* at 59.

{¶23} Both Taylor and Miller argue that they were prejudiced by the joinder of their charges for felonious assault and participating in a criminal gang because the introduction of gang photos, gang tattoos, and evidence of their prior bad acts prejudiced the jury against them. Because the foregoing evidence was necessary to prove the charge of participating in a criminal gang, presumably, Taylor and Miller mean that the evidence only biased the jury against them with regard to their felonious assault charges. The record supports the conclusion that the jurors were able to separate the charges, however, as the jury did not even convict Miller of felonious assault. *See State v. Preib*, 9th Dist. No. 20183, 2001 WL 169090, *2 (Feb. 21, 2001) (rejecting severance argument in part because "the fact that the jury did not convict him for the alleged kidnapping is an indication that the jury was able to separate the evidence of the aggravated

robbery from the evidence of the kidnapping"). Furthermore, both the felonious assault charges contained attendant specifications for committing a felony offense of violence while participating in a criminal gang. *See* R.C. 2941.142. Taylor and Miller have failed to explain why the evidence presented here would not otherwise have been admissible in both trials even if the charges had been severed. *See State v. Singfield*, 9th Dist. No. 17160, 1996 WL 137412, *9 (Mar. 27, 1996), citing *Schaim* at 59. Their arguments that prejudice resulted from the joinder are purely speculative in nature and far from an affirmative showing of actual prejudice. *See Torres*, 66 Ohio St.2d at syllabus. Taylor's fourth assignment of error and Miller's second assignment of error are overruled.

<u>Taylor's Assignment of Error Number Three</u>

THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT WHEN IT ALLOWED THE STATE TO PROCEED WITH AN INDICTMENT IN WHICH A VERDICT OF GUILTY COULD BE REACHED WITH THE JURY NOT BEING UNANIMOUS AS TO ANY ONE SET OF FACTS.

{¶24} In his third assignment of error, Taylor argues that his indictment was defective as a matter of law because it was duplicitous. Specifically, he argues that he did not have adequate notice of the charge against him and that the indictment compromised his right to a unanimous verdict. We disagree.

{¶25} This Court recently addressed the issue of duplicity and explained as follows:

Pursuant to Crim.R. 8(A), each offense must be separately delineated in the indictment. An indictment is duplicitous when two or more separate offenses are joined in one count. The prohibition against duplicity is geared to protect the accused's Sixth Amendment right to notice of the nature of the charge against him and prevent confusion as to the basis of the verdict. A criminal defendant is entitled to a unanimous jury verdict. If two distinct offenses are presented in a single charge, however, unanimity may be compromised. That is, if two offenses are joined in a single count, while the jury may agree that the defendant is guilty of that count, they may have not unanimously decided which set of facts resulted in the offense. If the trial court finds that the indictment is duplicitous, the

indictment shall not be quashed, set aside or dismissed. Instead, the trial court may sever the indictment into separate indictments or separate counts.

(Internal quotations and citations omitted.) *State v. Ward*, 9th Dist. No. 09CA009720, 2011-Ohio-518, ¶ 5. "[A] count is not duplicitous which charges the commission of the offense conjunctively in two ways, provided there is no repugnancy between the ways charged." *State v. Geckler*, 9th Dist. No. 20884, 2002-Ohio-5031, ¶ 22, quoting *State v. Daniels*, 169 Ohio St. 87, 103 (1959).

**{¶26}** Taylor avers that his felonious assault count was duplicitous because he did not have adequate notice of the conduct underlying that charge and it was not clear enough to ensure the jury reached a unanimous verdict. Taylor challenged the indictment below on the same basis. In response, the State identified the victim in this case as Echols and Taylor's continuous course of conduct against him on January 13, 2010, as the basis for the charge. The State further specified the following three specific acts as the alternative theories for the felonious assault charge, all three of which occurred during the continuous course of conduct: (1) the initial traffic collision that occurred outside the Long Avenue Market at W. 18th Street and Long Avenue; (2) the second traffic collision that occurred at W. 18th Street and Garden Avenue; and (3) the alleged crowbar attack that took place after the vehicles came to rest at W. 18th Street and Garden Avenue. Taylor's counsel indicated that the State's explanation "solve[d] the problem" so long as the court gave the jury a unanimity instruction. The court gave the following unanimity instruction:

Unanimity. Multiple acts cases are those where several acts are alleged, and any of those acts could constitute the crime charged. In those cases, the jury must unanimously agree on which act constituted the crime. In this case, the jury must agree that the same act was proven beyond a reasonable doubt by all 12 jurors.

Example in this case. You've heard in the arguments of counsel that there ha[s] been talk of the first automobile collision outside of the Long Avenue Market; a

second collision on Garden and 18th; and then the wielding of some type of instrument that's been referred to as a crowbar or a tire iron or something. Those are three separate events and have been argued as one course of continuous conduct or each separately could be looked at as a potential felonious assault.

I give you this example because if you went back in the jury room, for example, and six of you agreed that the first collision was a felonious assault, but six others said no, or one other said no, and 11 others said yes, it was, and then a different group on the second collision said well, we think, six or seven of us think that this was a felonious assault but the other members do not, you cannot say well, over all we had, you know, we had seven people here and five people on the other one. It can't be that way. You have to all agree that one event was a felonious assault, and you might agree that all three individual items constitute a felonious assault, or none of them constitute a felonious assault, but it must be unanimous with respect to each particular event.

Additionally, the State provided Taylor with a bill of particulars, outlining its continuous course of conduct theory on the felonious assault charge.

{¶27} The indictment here was not duplicitous simply because it contained a count that charged the commission of the offense in the conjunctive. *Daniels*, 169 Ohio St. at 103. The State's theories were not inconsistent, and the trial court gave the jury a detailed unanimity instruction. The State also provided Taylor with its continuous course of conduct theory well before trial. Indeed, Taylor's own counsel indicated that the State's explanation of the charge solved the duplicity problem so long as the court included a unanimity instruction. The record does not support Taylor's assertion that he did not have adequate notice of the charges here or that the jury did not reach a unanimous verdict due to a defect in his indictment. Taylor's third assignment of error is overruled.

Taylor's Assignment of Error Number Five

THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY ALLOWING THE INTRODUCTION OF ALLEGED EVIDENCE OF OTHER ACTS THAT WERE MORE PREJUDICIAL THAN PROBATIVE.

Miller's Assignment of Error Number Four

THE TRIAL COURT ERRED IN ALLOWING EVIDENCE OF OTHER ACTS TO BE INTRODUCED AT APPELLANT'S TRIAL AS IT WAS MORE PREJUDICIAL THAN PROBATIVE.

Taylor's Assignment of Error Number Nine

THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY ALLOWING EVIDENCE TO BE PRESENTED OF A CASE AGAINST APPELLANT WHICH HAD BEEN DISMISSED IN WHICH APPELLANT WAS ACCUSED OF MURDER.

Miller's Assignment of Error Number Five

THE TRIAL COURT ERRED IN ALLOWING EVIDENCE TO BE PRESENTED AT TRIAL OF A PREVIOUSLY DISMISSED CASE IN WHICH CO-DEFENDANT AVERY TAYLOR WAS ACCUSED OF MURDER, AS IT WAS EXTREMELY PREJUDICIAL.

{¶28} In each of the four foregoing assignments of error, Taylor and Miller argue that the trial court erred by admitting highly prejudicial evidence. Specifically, they argue that the court abused its discretion by admitting evidence of "prior bad acts" and allowing the State to reference a murder that neither of them was proven to have committed. We disagree.

{¶29} In general, "[a] determination regarding [the] admissibility of evidence is within the sound discretion of the trial court." *State v. Terrion*, 9th Dist. No. 25368, 2011-Ohio-3800, ¶ 21. With regard to evidence of prior bad acts, "[t]he Ohio Supreme Court has held that '[t]he admission of such evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice.'" *State v. Gates*, 9th Dist. No. 25435, 2011-Ohio-5631, ¶ 21, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 66. *Accord State v. Horne*, 9th Dist. No. 25238, 2011-Ohio-1901, ¶ 8. An abuse of discretion implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶30} "Evidence of prior criminal acts, which are wholly independent of the crime for which a defendant is on trial, is generally inadmissible." *State v. Truitt*, 9th Dist. No. 25527, 2011-Ohio-6599, ¶ 41. "Evidence of other crimes, wrongs, or acts * * * may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). "The Ohio Supreme Court has further recognized that evidence of prior bad acts by a defendant is admissible where it 'provided the context for the alleged crimes and made [the defendant's] actions more understandable to the jurors.'" *Gates* at ¶ 23, quoting *Diar* at ¶ 72. Moreover, evidence of a prior conviction is admissible "when it is one of the elements of the crime charged." *State v. Thompson*, 9th Dist. 98CA007112, 2000 WL 235535, *4 (Mar. 1, 2000).

{¶31} Both Taylor and Miller argue that the trial court abused its discretion by admitting evidence of "prior bad acts," but neither identifies any particular bad act or portion of the transcript where the court allegedly erred by admitting a prior bad act. *See* App.R. 16(A)(7). They also both acknowledge that the State presented the evidence of their "prior bad acts" to prove their gang charges. *See Thompson* at *4. Taylor and Miller insist, however, that the unidentified "prior bad acts" that were introduced here prejudiced them with regard to their felonious assault charge because the bad acts implied a propensity for engaging in that type of behavior. Essentially, Taylor and Miller rehash their joinder argument and point to the admission of prior bad acts as proof that the charges should have been severed for trial. Yet, this Court rejected their joinder argument above in overruling Taylor's fourth and Miller's second assignment of error. The State relied upon the alleged felonious assault here as part of its proof for Taylor and Miller's gang charges. The felonious assault charges themselves also contained attendant specifications for committing a felony offense of violence while participating in

criminal gang activity. *See* R.C. 2941.142. In addition to not identifying the particular prior bad acts they believe were wrongfully admitted here, Taylor and Miller also fail to explain why their prior bad acts were not admissible in order to prove their gang-related charges and specifications. As this Court has repeatedly held, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). Taylor and Miller have failed to demonstrate the trial court abused its discretion in admitting their prior bad acts. Accordingly, Taylor's fifth assignment of error and Miller's fourth assignment of error are overruled.

{¶32} In their remaining, related assignments of error, Taylor and Miller argue that the court abused its discretion by allowing the State to present evidence of two murders that occurred in June 2009. The State's theory was that Taylor and Miller assaulted Echols on January 13, 2010, in retaliation for one of the murders that occurred. On June 22, 2009, Chris Hill, a suspected Southside gang member, was killed. Later that same day, Marquis McCall, an individual affiliated with the Westside gang, was killed. The State informed the jury that both Taylor and Miller were related to Hill and that one of the passengers in Echols' car on January 13, 2010, Romando Smith, was related to McCall. Additionally, Echols himself had been friends with McCall. The State later introduced evidence at the trial that after the collision with Echols occurred and the police became involved, Taylor sent a text message stating "RIP Money Bags." The prosecutor explained that "RIP" meant rest in peace and that "Money Bags" was Hill's pseudonym.

{¶33} Taylor and Miller argue that the admission of evidence regarding the June 2009 murders was highly prejudicial. Yet, the portions of the transcript to which both Taylor and Miller cite in their respective assignments of error are excerpts from the prosecutor's opening

statement. Opening statements are not evidence, and the jury was instructed as such. *State v. Frazier*, 73 Ohio St.3d 323, 338 (1995) ("It is well settled that statements made by counsel in opening statements and closing arguments are not evidence."). Additionally, the State never asserted that Taylor and Miller were involved with the actual perpetration of the murders that took place on June 22, 2009. Rather, the murders provided a motive for the incident with Echols on January 13, 2010, as well as context for the gang charges at trial. *See Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, at ¶ 72; *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 75; *Gates*, 2011-Ohio-5631, ¶ 21-24. The references to the murders were prejudicial, but also highly probative. *See State v. Webber*, 9th Dist. No. CA3001-M, 2000 WL 1197025, *3 (Aug. 23, 2000). The trial court determined that the murders were relevant background information and bore upon the issues of motive and the existence of the Southside gang. Based on our review of the record, we cannot conclude that the trial court abused its discretion in so concluding. Taylor's ninth assignment of error and Miller's fifth assignment of error are overruled.

<u>Taylor's Assignment of Error Number Seven</u>

THE TRIAL COURT ERRED TO THE DETRIMENT OF TAYLOR BY ALLOWING EVIDENCE TO BE PRESENTED WITHOUT FIRST LAYING A PROPER FOUNDATION.

{¶34} In his seventh assignment of error, Taylor argues that the trial court erred by admitting multiple exhibits in the absence of a proper foundation. Specifically, Taylor argues that a video and numerous photographs were inadmissible because the State failed to authenticate them.

{¶35} The admission of photographic and videotape evidence is a matter of discretion for the trial court. *State v. Moultry*, 9th Dist. No. 25065, 2010-Ohio-3010, ¶ 7-13; *Bryant v. Terry*, 9th Dist. No. 20140, 2001 WL 324389, *3 (Apr. 4, 2001). "Under Evid.R. 901(A),

videotapes are properly admitted into evidence only upon sufficient showing that they accurately depict what their proponent purports they depict." *Bryant* at ¶ 3. Similarly, "[a] photograph is admissible into evidence if it is authenticated or identified as a fair and accurate representation of what it is purported to depict." *State v. Baker*, 9th Dist. No. 21414, 2003-Ohio-4637, ¶ 17. This Court will not reverse a trial court's admission of a photograph or video absent an abuse of discretion. *Id.*; *Bryant* at *3. An abuse of discretion implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶36}** The videotape the State introduced here captured the automobile collision that occurred on W. 18th Street and Long Avenue. Detective A.J. Mathewson testified that he obtained the video from the surveillance cameras at Long Avenue Market. Taylor argues that the trial court erred by admitting the video because no one testified when and how the tape was made or that it fairly and accurately depicted the events that occurred on the day in question. The State played the video during Echols' testimony, however, and Echols testified that it depicted the collision he was involved in on W. 18th Street and Long Avenue. Taylor fails to explain why the State could not have authenticated the video by way of Echols' testimony, as he was actually involved in the collision depicted in the video. *See Baker* at ¶ 18 (upholding admission of photographs introduced through the testimony of the witness who viewed the objects depicted in the photographs on the date in question). Moreover, Taylor did not object when the State played the video or when the State introduced numerous stills from the video through Detective Buddy Sivert. *See State v. Stallworth*, 9th Dist. No. 25461, 2011-Ohio-4492, ¶ 21 (explaining that defendant forfeits objection to publication of photographs in the absence of a contemporaneous objection). He does not address the issue of his having forfeited his objection to the video's authentication, *see id.*, or the issue of the video's admission being

harmless in light of the admission of 26 stills from the video. *See* Crim.R. 52(A). For all the foregoing reasons, we reject Taylor's argument that the trial court erred by admitting the videotape from Long Avenue Market.

{¶37} Next, Taylor argues that the trial court erred by admitting a series of photographs taken in jail and/or the police department. He argues that the photographs were improperly authenticated and were more prejudicial than probative. The photographs with which he takes issue depict Antwain Blake, Billy Gilbert, and Taylor displaying numerous tattoos on their bodies. As to the photographs of Gilbert, Officer Lawrence Findish testified that he took the two photographs of Gilbert himself in 2009 or 2010 at the Lorain Police Department's old police substation. As to the photograph of Blake and photographs of Taylor, Lieutenant Edward Super II testified that all of the photographs were taken at his direction during the booking processes of the two men. He testified that Taylor's photographs were taken on January 13, 2010, and he personally observed several of Taylor's tattoos that day. Lieutenant Super testified that he was not present when Blake's photograph was taken, but the photograph was kept in the normal course of business for the Lorain Police Department. He further testified that he was familiar with Blake because he had personally dealt with him in the past. Detective Buddy Sivert also identified Antwain Blake in the same photograph.

{¶38} As with the introduction of the videotape here, Taylor did not contemporaneously object when any of the foregoing photographs were introduced. He, therefore, forfeited any argument with respect to their admission. *Stallworth* at ¶ 21. His brief also lacks any analysis as to why the photographs were not properly introduced through the testimony of Officer Findish and Lieutenant Super II. *See* App.R. 16(A)(7). Taylor's argument that the trial court erred by admitting the photographs outlined above is meritless.

{¶39} Finally, Taylor argues that the trial court erred by admitting a series of photographs the police collected from MySpace, a social networking website. All of the photographs depict Taylor surrounded by two or more other individuals. Each photograph captures at least one of the individuals depicted therein displaying a gang sign. Taylor argues that the photographs should not have been admitted because the State failed to lay a proper foundation for them.

{¶40} Detective Sivert testified that members of the gang task force searched for and collected any gang-related photographs from webpages as part of their investigative duties. According to Detective Sivert, the photographs typically displayed individuals flashing gang signs or otherwise showing their allegiance to a certain gang. He specified that some of the photographs collected by the task force came from MySpace and that he had reviewed many such photographs in the course of aiding the task force. Without referencing any particular photograph, Detective Sivert testified that Taylor, Miller, Blake, and Gilbert all appeared in photographs that he reviewed for the gang task force. The State then introduced Exhibits 32 and 33. Exhibit 32 depicts Taylor, Miller, and Blake. Detective Sivert testified that, in the photograph, Taylor is displaying a "30th Street" gang sign and Miller is holding a gun. Exhibit 33 depicts Miller, Antwain Blake, and two other individuals named Larry Blake and Lantous Thorpe. Larry Blake and Lantous Thorpe are displaying gang signs and all four individuals are gathered around a bill, the denomination of which is not possible to discern, that is displayed in the middle of the photograph. Taylor did not contemporaneously object to either photograph upon its introduction. Nor did he contemporaneously object to the introduction of Exhibits 31, 85, 86, and 87, all of which depict Taylor and Miller in groups with various members of the group displaying gang signs.

**{¶41}** Lieutenant Super II testified that he obtained the foregoing photograph exhibits from MySpace by finding a particular picture of interest on a webpage, recording the individual account number registered to the MySpace account for that webpage, and subpoenaing MySpace for the information from that account's webpage. Lieutenant Super II explained that he received account information directly from MySpace on protected disks, which were unable to be altered. He testified that Exhibits 31-33 were uploaded on September 17, 2009, Exhibit 85 was uploaded May 3, 2009, Exhibit 86 was downloaded May 11, 2009, and Exhibit 87 was downloaded prior to January 13, 2010. Lieutenant Super II also took a snapshot photograph of another individual, Bryan Atkinson's, MySpace webpage. The snapshot of the webpage was labeled Exhibit 93, but the picture on webpage was the same picture introduced as Exhibit 85.

**{¶42}** Taylor argues that Exhibits 31-33, 85-87, and 93 should not have been admitted because no one testified when they were posted to MySpace, no one testified who took the photographs, there was no testimony as to when or where the photographs were taken, and Lieutenant Super II was unable to say whether any of the photographs had been altered. Taylor's first assertion is incorrect, however, as Lieutenant Super II specifically provided the upload dates for each of the photographs at issue. Moreover, the State was not required to locate the person or people responsible for taking and uploading the pictures at issue here. "A photograph is admissible in evidence if it is shown to be an accurate representation of what or whom it purports to represent." *State v. Hannah*, 54 Ohio St.2d 84, 88 (1978). Lieutenant Super II testified that he had personally dealt with Taylor, Miller, Blake, and Gilbert. Based on his personal knowledge of them, he was able to recognize and identify them in the photographs the State introduced.

**{¶43}** While his objection was not contemporaneous in nature, Taylor's counsel did challenge the photographs after their initial introduction on the basis of authenticity.

Specifically, he argued that the State failed to prove the photographs had not been altered before being uploaded to MySpace. The trial court determined that the issue went to weight rather than admissibility and admitted the photographs. Taylor maintains on appeal that the photographs were inadmissible absent some proof that they were unaltered.

{¶44} Taylor's argument that the MySpace photographs might have been altered at some point is purely "speculative conjecture." *See State v. Thomas*, 9th Dist. No. 92CA005505, 1993 WL 311430, *3 (Aug. 18, 1993) (concluding that appellant's speculative argument did not demonstrate prejudice). Detective Sivert and Lieutenant Super II were both able to recognize Taylor and the others from the photographs. Lieutenant Super II, in particular, was familiar with Taylor, Miller, Blake, and Gilbert as he had personally dealt with them. The State is permitted to authenticate a photograph through witness testimony where a witness is sufficiently familiar with the subject of the photograph. *See Hannah* at 88-89. *See also State v. McCraney*, 9th Dist. Nos. 24750 & 25285, 2010-Ohio-6128, ¶ 27-28 (noting that the State introduced multiple gang-related photographs uploaded to the appellant's MySpace page through officer testimony). Taylor has failed to provide this Court with any argument or case law standing for the proposition that the State had to set forth anything more. *See* App.R. 16(A)(7). *See also State v. Bettis*, 12th Dist. No. CA2004-02-034, 2005-Ohio-2917, ¶ 30 ("[T]riers of fact are still capable of distinguishing between real and virtual images, and admissibility remains within the province of the sound discretion of the trial judge."). Further, despite having forfeited his objections in the court below by failing to contemporaneously object, he has not argued plain error on appeal. *See State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, ¶ 49-51. For all of the foregoing reasons, Taylor has failed to demonstrate that the trial court abused its discretion by admitting the video and photographs the State introduced here. Taylor's seventh assignment of error is overruled.

Taylor's Assignment of Error Number Eight

THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY ALLOWING EVIDENCE TO BE PRESENTED THAT WERE (sic) MORE PREJUDICIAL THAN PROBATIVE.

{¶45} In his eighth assignment of error, Taylor argues that the trial court erred by admitting evidence that was more prejudicial than probative. Specifically, he argues that the court erred by admitting photographic evidence and by allowing police officers to testify as experts without expert reports being provided.

{¶46} The failure of a defendant to contemporaneously object to the introduction of evidence to the jury "forfeits the matter for review on appeal." *State v. Sykes*, 9th Dist. No. 25263, 2011-Ohio-293, ¶ 8. "Forfeiture precludes the consideration of all but plain error under Crim.R. 52(B)." *State v. Ricks*, 9th Dist. No. 09CA0094-M, 2010-Ohio-4659, ¶ 13.

> To correct a plain error, all of the following elements must apply: "First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights[ ]' [to the extent that it] * * * affected the outcome of the trial."

*State v. Hardges*, 9th Dist. No. 24175, 2008-Ohio-5567, ¶ 9, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Courts are to notice plain error 'only to prevent a manifest miscarriage of justice.'" *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 16, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶47} Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Taylor argues that the court erred by admitting photographs that depicted him along with other alleged gang members because the photographs were highly prejudicial to his felonious assault charge. He further argues that it was highly

prejudicial for police officers to testify as experts without expert reports being provided. The portion of the transcript to which Taylor cites for both propositions, however, corresponds to an oral motion in limine he made at the start of trial. "A court's ruling on a motion in limine does not preserve issues related to evidentiary rulings for appeal." *State v. Garfield*, 9th Dist. No. 09CA009741, 2011-Ohio-2606, ¶ 55.

**{¶48}** The record reflects that Taylor did not contemporaneously object to the introduction of the photographic exhibits here when the State first introduced them. Taylor also did not object before the State's witnesses testified on the basis that they had not provided expert reports. Accordingly, he forfeited those arguments, save for a claim of plain error. *Sykes* at ¶ 8. Yet, Taylor has not argued plain error. Nor has he challenged any particular photograph or expert in his argument, other than to say that, in general, he was prejudiced by the "photos of him and other alleged gang members" and the police officers who testified as experts. As previously noted, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone*, 1998 WL 224934, at *8. Taylor's eighth assignment of error is overruled.

Taylor's Assignment of Error Number Six

THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY ALLOWING POLICE OFFICERS TO TESTIFY AS GANG EXPERTS EVEN THOUGH THEY WERE NOT QUALIFIED AS EXPERTS AND HAD NOT PROVIDED EXPERT REPORTS.

Miller's Assignment of Error Number Six

THE TRIAL COURT ERRED IN ALLOWING POLICE OFFICERS TO TESTIFY AS GANG EXPERTS WITHOUT FIRST BEING PROPERLY QUALIFIED AS EXPERTS.

Taylor's Assignment of Error Number Ten

THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY ALLOWING THE STATE'S GANG EXPERTS TESTIFY (sic) THAT APPELLANT BELONGED TO A GANG RATHER THAN LETTING THE JURY DRAW ITS OWN CONCLUSIONS BASED ON EVIDENCE PRESENTED.

Miller's Assignment of Error Number Seven

THE TRIAL COURT ERRED IN ALLOWING POLICE OFFICERS TO CONCLUSIVELY STATE THAT APPELLANT BELONGED TO A GANG RATHER THAN ALLOW THE JURY TO DRAW ITS OWN CONCLUSIONS.

{¶49} In each of the foregoing assignments of error, Taylor and Miller argue that the trial court abused its discretion by admitting expert testimony. In particular, they take issue with the admission of Detective Steyvan Curry's testimony, the failure of the State's experts to provide expert reports, and the trial court's error in allowing Detective Sivert to offer ultimate issue testimony.

{¶50} Evid.R. 702 governs the admission of expert testimony and provides, in relevant part, as follows:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.

Evid.R. 702(A)-(C). Expert qualification is a matter of trial court discretion. *State v. Sommers*, 9th Dist. No. 09CA0063, 2010-Ohio-5194, ¶ 18; *State v. Collins*, 9th Dist. No. 22333, 2005-Ohio-2812, ¶ 6-7. Accordingly, the abuse of discretion standard of review applies. *Sommers* at

¶ 20; *Collins* at ¶ 6. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219.

**{¶51}** "Neither special education nor certification is necessary to confer expert status upon a witness. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, at ¶ 113. Evid.R. 702 "may be satisfied by on-the-job training and experience." *State v. Fogler*, 9th Dist. No. 08CA0004-M, 2008-Ohio-5927, ¶ 8.

Detective Curry

**{¶52}** Detective Curry testified as an expert to provide a historical perspective on gangs in general and gangs specific to Lorain County. He possessed extensive knowledge about the different gangs in Lorain and testified about gang culture. In particular, he was able to testify about the connections between gangs, violence, drugs, graffiti, tattoos, and the music and clothing industries. Detective Curry was assigned to gang-related duties from 1994 to approximately 2002, when he was assigned to other activities. He testified, however, that he still continuously received information about gang-related activity while assigned to his other duties due to his work with confidential informants, gang members, and other individuals from "the street." Detective Taylor testified that one particular Southside gang from Lorain was the Hardbodies gang and that he saw Hardbody tattoos on both Taylor and Miller.

**{¶53}** Taylor and Miller argue that the court should have struck Detective Curry's testimony. Taylor does not offer any analysis as to why Detective Curry was not an expert, but asserts that his case should be remanded for retrial because "after [Detective Curry] testified, the court found him not to be an expert." The transcript does not support Taylor's assertion. In

considering motions after the close of the State's evidence, the trial court specifically overruled the argument that Detective Curry was not qualified to testify. The court indicated that defense counsel could attack Detective Curry's testimony in closing argument on the basis that he had been assigned to other duties for several years, but specified that "I believe that Detective Curry was properly qualified."

**{¶54}** Miller acknowledges that the trial court found Detective Curry to be an expert, but argues that Detective Curry's testimony was irrelevant. Miller asserts that a historical perspective was unnecessary because no one ever disputed that gangs existed in Lorain. He further asserts that Detective Curry's testimony was irrelevant because Detective Curry admitted he had not worked in the gang unit for approximately eight years.

**{¶55}** "Gang affiliation can be relevant in cases in which the interrelationship between people is a central issue." *Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, at ¶ 112. With the exception of Taylor's receiving stolen property charge, all of the charges here required the State to prove that Taylor and Miller were members of a gang and committed criminal activities while participating in that gang. There was a great deal of testimony throughout the trial about gang names, gang culture, graffiti, and tattoos. The trial court determined that Detective Curry's testimony, while largely historical, was relevant. *See id.* at ¶ 112 ("The evidence of the Lincoln Knolls Crips culture, symbols, hand gestures, and traditions provided the jury with crucial background information in considering the evidence.") Further, while Detective Curry did testify that he had not worked in the gang unit for approximately eight years, he also testified that he continued to maintain his knowledge of gang-activity through his associations and other police work. Based on our review of the record, we cannot conclude that the trial court abused its discretion by allowing Detective Curry to testify as an expert.

Expert Reports

**{¶56}** Next, Taylor and Miller argue that the trial court erred by allowing the State's experts to testify because the State did not provide the defense with expert reports for any of the witnesses who testified. Both cite to Local Rule 11 of the Lorain County, Ohio Rules of Court, requiring the exchange of expert reports in advance of trial. The record is somewhat confusing with regard to whether or not expert reports were submitted here. When questioned by Taylor's counsel as to whether he had prepared a report in connection with this case as to his qualifications, Detective Sivert testified that he did. Even disregarding the confusion, however, neither Taylor nor Miller cited to Local Rule 11 at the trial court level, contemporaneously objected to any of the expert witnesses on the basis that expert reports were not provided, asked for a continuance, or otherwise placed the issue before the trial court. *See State v. Spikes*, 9th Dist. No. 05CA008680, 2006-Ohio-1822, ¶ 29 (noting that a discovery defect may be cured through the disclosure of the material and a continuance if brought to the attention of the trial court). This Court will not address their arguments for the first time on appeal. *State v. Allen*, 9th Dist. No. 25349, 2012-Ohio-249, ¶ 29. Their arguments, therefore, are overruled.

Ultimate Issue Testimony

**{¶57}** Finally, both Taylor and Miller argue that the trial court erred by allowing Detective Sivert to testify as to the ultimate issue of whether they were members of a gang. On direct examination, Detective Sivert testified that Taylor, Miller, Gilbert, and Blake were all members of a gang before January 13, 2010. Taylor and Miller argue the ultimate issue of whether or not they were gang members was one properly reserved for the jury.

**{¶58}** Ultimate issue testimony is not per se inadmissible. Evid.R. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it

embraces an ultimate issue to be decided by the trier of fact."). Rather, its admission depends upon how helpful the opinion is to the jury and whether the issue is one that might be beyond an ordinary juror's understanding. *Shepherd v. Midland Mut. Life Ins. Co.*, 152 Ohio St. 6 (1949), paragraphs one and two of the syllabus (holding that the existence or nonexistence of an ultimate fact is generally the province of the jury, but that an expert may express an opinion on the same if the issue is one "beyond the experience, knowledge or comprehension of the jury"). *Accord Rasalan v. TJX Operating Cos., Inc.*, 129 Ohio App.3d 364, 369 (9th Dist.1998), quoting *Burens v. Indus. Comm.*, 162 Ohio St. 549 (1955), paragraph two of the syllabus ("An expert witness 'may not express an opinion upon matters as to which the jury is capable of forming a competent conclusion.'"). For instance, in child abuse cases an expert may testify as to the ultimate issue of whether or not a child was sexually abused, as "[m]ost jurors would not be aware, in their everyday experiences, of how sexually abused children might respond to abuse." *State v. Boston*, 46 Ohio St.3d 108, 128 (1989), modified in part by *State v. Dever*, 64 Ohio St.3d 401 (1992), paragraph one of the syllabus. *See also State v. Jackson*, 9th Dist. No. 2754, 1994 WL 162338, *2 (May 4, 1994) (allowing expert's testimony that certain instruments were securities within the meaning of the Revised Code); *State v. Kelly*, 9th Dist. No. 15250, 1992 WL 67587, *1-2 (Apr. 1, 1992) (allowing expert's testimony that the defendant caused the traffic collision that occurred); *State v. Wenhart*, 9th Dist. No. 1967, 1991 WL 95261, *3 (May 29, 1991) (allowing expert's testimony that the defendant was under the influence of alcohol and that he engaged in conduct that presented a risk of physical harm even though those were ultimate issues in the case).

{¶59} Neither defendant here objected when Detective Sivert testified that they were members of a gang before January 13, 2010, the date of the alleged felonious assault against

Echols. After Detective Sivert completed his testimony, their attorneys met with the trial judge at sidebar and asked that the State's next expert witness not be permitted to testify as to the ultimate issue that Taylor and Miller were gang members. Taylor's counsel admitted that no objection was made when Detective Sivert testified, but that he wanted to object to Detective Sivert's testimony on the same basis. Miller's counsel joined in the objection. After extensive discussion and review of cases provided by both the State and defense counsel, the trial court agreed that an expert cannot opine on the ultimate issue of whether a particular defendant is a member of a particular gang because the issue is not one beyond the scope of the jury's comprehension. The court later instructed the jury to disregard Detective Sivert's ultimate issue testimony, indicating that it had reconsidered an earlier ruling. Specifically, the court instructed the jury that Detective Sivert's opinion that the defendants were gang members "is not admissible and may not be considered for any purpose. You must treat it as though you had never heard it."

{¶60} Assuming without deciding that the trial court correctly determined that Detective Sivert's ultimate issue testimony was inadmissible, we conclude that any error in its admission was harmless beyond a reasonable doubt. After Detective Sivert's testimony, the trial court did not permit any of the other testifying officers to opine that Taylor and Miller actually were gang members. The court did permit testimony, however, that both Taylor and Miller behaved in a manner consistent with gang membership. Officer Lawrence Findish testified to that effect. Moreover, after identifying Hardbodies as one of the Southside gangs in Lorain, Miller's counsel specifically asked Officer Findish on cross-examination who belonged to the Harbodies set in Lorain. The following exchange took place:

[MILLER'S COUNSEL:] And who is in that set?

[OFFICER FINDISH:] Who is in that set? Do you want me to name the individuals?

[MILLER'S COUNSEL:] Yes.

[OFFICER FINDISH:] Hardbodies, I have Andrew Lorenzana; Bohannon Miller; Avery Taylor; Billy Gilbert, and that's all I could think of at this time.

[MILLER'S COUNSEL:] Okay. So we've got four guys that are in this set. And these guys are a set of the Southside gang.

Miller's counsel also asked Lieutenant Super II a similar question. In inquiring about Taylor's Hardbody tattoo, Miller's counsel asked Lieutenant Super II which group/set of individuals, other than Miller, Taylor associated with, and Lieutenant Super II testified: "Andrew Lorenzana; Billy Gilbert; Corey Patfield; Antwain Blake; there's several individuals who claim Hardbodies." Both of the exchanges with Officer Findish and Lieutenant Super II took place after the trial court had agreed that the State would no longer be permitted to ask its experts whether Taylor and Miller were gang members.

{¶61} Taylor and Miller do not explain how they were prejudiced by the admission of Detective Sivert's ultimate issue testimony, given that Miller's counsel repeatedly asked other officers to identify the members of the gang to which the defendants belonged. *See* App.R. 16(A)(7). Neither Taylor nor Miller contemporaneously objected to Detective Sivert's testimony, the court gave a specific curative instruction to the jury to disregard the ultimate issue portion of Detective Sivert's testimony, and the ultimate issue information Detective Sivert offered was essentially elicited from other officers through defense counsel. Based on all the foregoing, we conclude that Taylor and Miller have not shown that they suffered actual prejudice as a result of Detective Sivert having testified they were both gang members. Taylor's sixth and tenth assignments of error are overruled, and Miller's sixth and seventh assignments of error are overruled.

Taylor's Assignment of Error Number One

THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY NOT ORDERING A MISTRIAL WHEN AN ASSOCIATE OF APPELLANT'S WHO APPEARED IN ALLEGED "GANG PHOTOGRAPHS" WITH APPELLANT ENTERED THE JURY ROOM AND INTIMIDATED THE JURY AND WHEN OFFICERS IDENTIFIED TAYLOR AS A GANG MEMBER.

Miller's Assignment of Error Number Eight

THE TRIAL COURT ERRED BY NOT DECLARING A MISTRIAL WHEN AN ASSOCIATE OF CO-DEFENDANT AVERY TAYLOR ENTERED THE JURY ROOM AND INTIMIDATED THE JURY.

{¶62} In Taylor's first assignment of error and Miller's eighth, they argue that the trial court erred by not declaring a mistrial. We disagree.

{¶63} "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected. Great deference is afforded to a trial court's decision regarding a motion for mistrial. Accordingly, this Court reviews the denial of a motion for mistrial for an abuse of discretion." (Internal citations, alterations, and quotations omitted.) *State v. Howes*, 9th Dist. No. 24665, 2010-Ohio-421, ¶ 11. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219.

{¶64} Taylor and Miller argue that the trial court abused its discretion by not declaring a mistrial after a man, later identified as Taylor's mother's friend, entered the jury assembly area. The court learned that the incident occurred after one of the jurors (Juror 6) informed the court about it via a written note. After learning of the incident, the court conducted an in camera hearing with each juror to inquire as to whether the jurors were aware of the event and whether they felt they could continue on in light of it. Jurors 2, 5, 7, 9, 10, and 11 were not aware that the

incident had even occurred. Juror 13 did not personally view the incident, but was aware of it. Nevertheless, Juror 13 indicated that it was not a matter of concern and, instead, inquired when the trial would be ending due to an upcoming vacation. Jurors 1, 4, and 12 described the incident as strange and odd, but confirmed that it would not affect their judgment or ability to serve as jurors. Jurors 3 and 6 indicated that they had general safety concerns about the trial because of the charges, but were not concerned with the specific incident that occurred. Both stated that the incident would not affect their ability to continue serving as jurors. Juror 8 was the only juror to express numerous concerns about the case. Although Juror 8 did not feel that the particular incident that occurred affected her, she indicated that she felt a great deal of stress about the trial in general and that the stress was contributing to her medical problems. The trial court ultimately denied the motion for a mistrial, but dismissed Juror 8 due to the health issues she raised.

{¶65} "When a trial court learns of an improper outside communication with a juror, it must hold a hearing to determine whether the communication biased the juror." *State v. Phillips*, 74 Ohio St.3d 72, 88 (1995). "In cases involving outside influences on jurors, trial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror." *Id.* at 89. Furthermore, "[a] juror's belief in his or her own impartiality is not inherently suspect and may be relied upon by the trial court." *Id.*

{¶66} Taylor and Miller assert that the court abused its discretion by not declaring a mistrial because several jurors felt intimidated, and the court should have erred on the side of caution. With the exception of the dismissed juror (Juror 8), however, all of the jurors said they could continue to serve and did not feel that they were affected by the incident. *See id.* As to the incident itself, the jurors described it as follows. A man came into the jury assembly area during

a break in the trial and apparently asked about being paid for previously served jury duty. One of the jurors (Juror 6) decided to tell the judge what had occurred because she recognized the man. Specifically, the man had been in the courtroom several times during the course of the trial and may have appeared in a photograph that the State introduced. Yet, no one claimed that the man ever referenced the case at hand while in the jury assembly area, and his presence in the room was brief. Additionally, none of the jurors stated that they felt intimidated by the incident.

{¶67} The trial court had the opportunity to speak with each juror, observe them, and consider their answers about the incident that occurred here. The court excused the only juror (Juror 8) that truly expressed concerns about her ability to serve. In exercising its discretion, the court determined that a mistrial was not necessary because the remaining jurors could continue to be impartial. Based on our review of the record, we cannot conclude that the court abused its discretion in reaching that determination.

{¶68} Taylor also argues that the court should have declared a mistrial because "the State's witness testified that Taylor was a member of a gang * * *." This Court previously addressed the issue of ultimate issue testimony. In reviewing Taylor's tenth assignment of error, we determined that he failed to demonstrate prejudice as a result of Detective Sivert's statement that Taylor was a member of a gang. In the absence of proof that his substantial rights were adversely affected, a mistrial was not warranted. *Howes*, 2010-Ohio-421, at ¶ 11. As such, we reject his additional assertion that the court should have declared a mistrial after Detective Sivert testified. Taylor's first assignment of error and Miller's eighth assignment of error are overruled.

<u>Taylor's Assignment of Error Number Thirteen</u>

THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY GIVING ERRONEOUS JURY INSTRUCTIONS AS TO FELONIOUS ASSAULT.

{¶69} In his thirteenth assignment of error, Taylor argues that the trial court committed plain error when it instructed the jury on felonious assault.

{¶70} Generally, a defendant's failure to object to an allegedly erroneous jury instruction limits any review of the alleged error to a review for plain error. *State v. Johnson*, 9th Dist. No. 25525, 2011-Ohio-3941, ¶ 20. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Waiver, however, "cannot form the basis of any claimed error under Crim.R. 52(B)." *Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 23, quoting *State v. McKee*, 91 Ohio St.3d 292, 299 (2001), fn. 3 (Cook, J., dissenting). "Waiver is the intentional relinquishment or abandonment of a right[.]" *Payne* at ¶ 23. "A defendant, through the statements of his counsel, may waive a jury instruction." *State v. Walker*, 9th Dist. No. 10CA0011, 2011-Ohio-517, ¶ 25, citing *State v. Feliciano*, 9th Dist. No. 09CA009595, 2010-Ohio-2809, ¶ 7.

{¶71} R.C. 2903.11(A)(2) provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." The trial court instructed the jury as follows:

> Before you can find the defendant guilty, you must find beyond a reasonable doubt that: on or about January 13th, 2010; two, in Lorain County, Ohio; three, the defendant knowingly; four, caused or attempted to cause physical harm to another; five, by means of a deadly weapon. So there are five ingredients so to speak here or five elements.

The court then went on to define "knowingly" and later defined "causation." The court defined causation as "an act or failure to act which in the natural and continuous sequence directly produces the physical harm, and without which it would not have occurred."

{¶72} Taylor argues that the court's felonious assault instruction failed to explain the mens rea applicable to felonious assault and erroneously indicated that Taylor could be convicted

based upon a perceived failure to act. Substantial discussion about the jury instructions took place outside the presence of the jury before the instructions were read. Taylor's counsel reviewed the page of jury instructions containing the felonious assault instruction and informed the trial court that he did not have any corrections. The following exchange took place:

[PROSECUTOR:] Under causation, Judge, the State charges that the act or failure to act of the defendant caused serious physical harm. For this it does not need to be serious, it only needs to be physical harm. So "serious" needs to be struck.

THE COURT: You are correct. Actually, to be even more accurate, it should be "caused or attempted to cause."

[PROSECUTOR:] Correct.

THE COURT: Which I am going to correct here. Anything further on page five [of the instructions]?

* * *

[TAYLOR'S COUNSEL:] Not from Mr. Taylor.

* * *

[TAYLOR'S COUNSEL:] Can we just put in there that [Taylor] caused physical -- we'll clean that up, "The State charges that the act or failure to act of defendant."

THE COURT: "Caused or attempted to cause physical harm to another."

[TAYLOR'S COUNSEL:] "By means of a deadly weapon[?]"

THE COURT: That would -- sure. I'll -- let's keep it consistent, we'll do it that way.

The instructions were written as discussed above and once again reviewed by defense counsel before being read to the jury. At that time, Taylor's counsel only pointed out a typographical error in the felonious assault instruction, which the court corrected. He did not raise any issue with the failure to act language contained in the instruction.

{¶73} The record supports the conclusion that Taylor's counsel specifically agreed to the wording of the felonious assault instruction he now challenges as incorrect. Specifically, he

read into the record the exact language that the court read to the jury. We, therefore, conclude that he waived any objection to the language at issue and cannot challenge it on appeal. *Walker*, 2011-Ohio-5630, at ¶ 25. Taylor's thirteenth assignment of error is overruled.

### Taylor's Assignment of Error Number Eleven

THE JURY ERRED TO THE DETRIMENT OF APPELLANT WHEN THEY FOUND APPELLANT GUILTY OF PARTICIPATING IN A CRIMINAL GANG AS THERE WAS NO PROOF BEYOND A REASONABLE DOUBT THAT THE GANG HAD A PRIMARY ACTIVITY OF ONE OF THE CRIMES LISTED IN R.C. 2923.41(B).

### Miller's Assignment of Error Number One

THE JURY LOST ITS WAY IN FINDING APPELLANT GUILTY OF PARTICIPATING IN A CRIMINAL GANG AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO FIND APPELLANT GUILTY BEYOND A REASONABLE DOUBT.

{¶74} In the foregoing assignments of error, Taylor and Miller argue that their convictions for participating in a criminal gang are based on insufficient evidence. We disagree.

{¶75} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins*, 78 Ohio St.3d at 386.

{¶76} R.C. 2923.42(A) provides as follows:

> No person who actively participates in a criminal gang, with knowledge that the criminal gang engages in or has engaged in a pattern of criminal gang activity,

shall purposely promote, further, or assist any criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code, or shall purposely commit or engage in any act that constitutes criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code.

R.C. 2923.41 defines the phrase "criminal gang" as well as "pattern of criminal gang activity."

(A) "Criminal gang" means an ongoing formal or informal organization, association, or group of three or more persons to which all of the following apply:

(1) It has as one of its primary activities the commission of one or more of the offenses listed in division (B) of this section.

(2) It has a common name or one or more common, identifying signs, symbols, or colors.

(3) The persons in the organization, association, or group individually or collectively engage in or have engaged in a pattern of criminal gang activity.

(B)(1) "Pattern of criminal gang activity" means, subject to division (B)(2) of this section, that persons in the criminal gang have committed, attempted to commit, conspired to commit, been complicitors in the commission of, or solicited, coerced, or intimidated another to commit, attempt to commit, conspire to commit, or be in complicity in the commission of two or more of any of the following offenses:

(a) A felony or an act committed by a juvenile that would be a felony if committed by an adult;

(b) An offense of violence or an act committed by a juvenile that would be an offense of violence if committed by an adult;

(c) A violation of section 2907.04, 2909.06, 2911.211, 2917.04, 2919.23, or 2919.24 of the Revised Code, section 2921.04 or 2923.16 of the Revised Code, section 2925.03 of the Revised Code if the offense is trafficking in marihuana, or section 2927.12 of the Revised Code.

R.C. 2923.41(A)-(B)(1). The statute also defines what constitutes a "pattern of criminal gang activity." R.C. 2923.41(B)(2). Specifically:

[t]here is a "pattern of criminal gang activity" if all of the following apply with respect to the offenses that are listed in division (B)(1)(a), (b), or (c) of this section and that persons in the criminal gang committed, attempted to commit, conspired to commit, were in complicity in committing, or solicited, coerced, or intimidated another to commit, attempt to commit, conspire to commit, or be in complicity in committing:

(a) At least one of the two or more offenses is a felony.

(b) At least one of those two or more offenses occurs on or after January 1, 1999.

(c) The last of those two or more offenses occurs within five years after at least one of those offenses.

(d) The two or more offenses are committed on separate occasions or by two or more persons.

R.C. 2923.41(B)(2).

{¶77} Both Taylor and Miller argue that their convictions are based on insufficient evidence because the State failed to establish: (1) that the gang to which they belonged had "as one of its primary activities the commission of one or more of the offenses listed in [R.C. 2923.41(B)]," R.C. 2923.41(A)(1); and (2) that either of them "actively" participated in the gang. Additionally, Miller argues that because the jury found him not guilty of felonious assault, a charge necessary to show a pattern of criminal activity, he could not have been found guilty of participating in a criminal gang.

Primary Activity

{¶78} As set forth above, to be considered a "criminal gang," one of the gang's primary activities must be the commission of certain enumerated offenses. R.C. 2923.41(A)(1). The enumerated offenses include felonies, offenses of violence, and acts that would have been felonies or offenses of violence had the perpetrator not been a juvenile. R.C. 2923.41(B)(1)(a)-(b). Taylor and Miller argue that the State failed to present any testimony on primary activity.

{¶79} Officer Mike Gidich testified that he responded to the accident that occurred at W. 18th St. and Garden Avenue and that he notified the detective bureau of the incident because, in his experience with gangs, it was very rare to see "Southside guys" in that area. He later explained that the area in which the accident occurred was associated with the Westside and a Southside gang member could be putting themselves in jeopardy by being there. Officer Gidich

testified that when the two groups interacted in each other's areas "we've had shootings there in the past over this, from west side to south side and vice versa."

**{¶80}** Detective Sivert testified that Lorain experienced an increase in gang violence in the mid- to late 2000s, including assaults and robberies, shootings, stabbings, home invasions, and drug dealing. He specified that the drug dealing "kind of took over" and "[t]he draw of the money from the gang from drug sales is what really, and today I think is what pushes the gangs mostly." He then testified that he investigated the Southside gang for the foregoing types of offenses. He identified a particular assault perpetrated by Southside gang members in April 2007, after which the victim had to be transported by LifeFlight. He also identified a murder that the police believed had been committed because a particular Southside gang member was selling drugs on Westside gang territory. According to Detective Sivert, the Lorain Police Department's gang task force began by focusing its resources on the Southside gang because of its violent tendencies and the multiple shootings attributed to its members.

**{¶81}** Officer Findish also answered questions about the structure of the Southside gang, indicating that the gang did not have a leader or defined structure because it was a hybrid gang. Officer Findish testified that a hybrid gang is "basically * * * a bunch of groups coming together, working together to form * * * just for one purpose and usually * * * it's money." Similarly, Detective Curry testified that the connection between different sets of the Southside gang was that "one of the strong things about gangs it's about making money."

**{¶82}** Finally, Samantha Liston testified that she was the owner of the gold Chrysler Concorde that collided with Echols' car on January 13, 2010. Liston testified that the car was stolen from her driveway and she later learned that Taylor had stolen it. Liston further testified that Taylor offered her drugs in exchange for not reporting the car stolen.

**{¶83}** Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have determined that the State set forth sufficient evidence to prove that one of the primary activities of the Southside gang and the various sets thereof was to commit both felonies and offenses of violence. Multiple witnesses testified about the violent tendencies of Southside gang members, including their involvement in robberies, shootings, and murders. Further, more than one officer testified that such gangs often form in order to make money through various activities, such as selling drugs. Liston testified that Taylor, in particular, offered her drugs in exchange for her silence. In light of all of the foregoing, the jury could have concluded that the State set forth sufficient evidence to satisfy R.C. 2923.41(A)(1). *See* R.C. 2923.41(A)(1), (B)(1)(a)-(b) (requiring a "criminal gang" to have as one of its primary activities the commission of felonies and/or offenses of violence).

Active Participation

**{¶84}** "[T]here is no criminal liability under [R.C.] 2923.42(A) unless the defendant actively participated in a gang, knew the gang engaged in criminal gang activity, and promoted, furthered, or assisted criminal conduct, or engaged in criminal conduct himself." *State v. Hairston*, 9th Dist. Nos. 23663 & 23680, 2008-Ohio-891, ¶ 15. "[T]he common and ordinary meaning of 'actively participates in a criminal gang' is involvement with a criminal gang that is more than nominal or passive." *State v. Stallings*, 150 Ohio App.3d 5, 2002-Ohio-5942, ¶ 16 (9th Dist.). This Court has previously determined that sufficient evidence of active participation existed where a defendant's residence had a number of graffiti markings denoting the gang at issue and the defendant previously had been arrested at a drug house at the same time as a known gang member. *Hairston* at ¶ 16-17.

**{¶85}** Officer Gidich testified that both Taylor and Miller are from the South side of town and that he referred the January 13, 2010 collision in which Taylor, Miller, and Echols were involved to the detective bureau because he believed it was gang-related. Detective Sivert also testified that Taylor and Miller were from the South side of Lorain and both were detained on April 1, 2007, along with Corey Patfield Briggs, Timothy Merritt, Antwain Blake, and Billy Gilbert, in connection with an assault that occurred at a nightclub there. Taylor and Miller both were convicted of aggravated rioting as a result of the incident. Detective Sivert stated that all of the other individuals detained for the April 2007 incident along with Taylor and Miller were from the South side.

**{¶86}** Through Detective Sivert and Lieutenant Super II, the State also introduced numerous photographs of the tattoos Taylor and Miller had on their bodies. Detective Sivert testified that Taylor had a tattoo of "Hard" on his right arm and "Body" on his left, as well as "GMB" on his stomach. He explained that Hardbodies is a set of the Southside gang as is "GMB," which stands for "Get Money Boys." Detective Sivert also testified that Miller had tattoos depicting "Hardbodies" and "Get Money Boys" across his chest and stomach. Further, he testified that Miller had a "Campito" tattoo on his hand and that Campito "is a gang associated with the South Lorain gang." Detective Sivert stated that Taylor, Miller, Blake, and Gilbert all had Hardbodies tattoos.

**{¶87}** Other photographs the State introduced depict both Taylor and Miller either displaying gang signs themselves or standing alongside other individuals displaying gang signs. Lieutenant Super II testified that several of the other individuals in the photographs are suspected gang members. Moreover, Officer Findish was able to identify the gang signs being portrayed in

the photographs and testified that, based on his experience, both Taylor and Miller's behavior was consistent with that of gang membership.

{¶88} Once again viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State set forth sufficient evidence to show that both Taylor and Miller actively participated in a criminal gang. *See* R.C. 2923.42(A). Both had numerous gang-related tattoos, were photographed either displaying gang signs or alongside other individuals displaying gang signs, and had prior convictions after they were arrested along with several other suspected gang members. *See Hairston*, 2008-Ohio-891, at ¶ 16-17 (concluding that the State presented sufficient evidence of active participation in a gang where the defendant had graffiti markings of the gang in his home and was previously arrested at the same time of a known gang member). *See also McCraney*, 2010-Ohio-6128, at ¶ 27-30 (agreeing that the State set forth sufficient evidence of active participation, in part, because the appellant had a MySpace webpage that depicted numerous gang-related photographs). Taylor and Miller's argument that the State failed to set forth sufficient evidence of active participation lacks merit.

Pattern of Criminal Activity

{¶89} Lastly, Miller argues that his conviction is based on insufficient evidence because the jury only could convict him of participating in a criminal gang if it first convicted him of felonious assault. His entire argument consists of the following two sentences:

> More importantly, the jury found Miller not guilty of the felonious assault charge and thus he did not commit conduct encouraged by the gang. Since he was not found guilty of the felonious assault, he cannot be found guilty of participating in a criminal gang charge.

He does not cite any authority in support of his argument or provide any additional rationale for his conclusion. *See* App.R. 16(A)(7).

{¶90} In addition to his aggravated rioting conviction for the April 2007 incident, Miller also was convicted of having weapons under disability and carrying a concealed weapon in March 2008. The trial court admitted certified copies of Miller's convictions, all of which were felonies. *See* R.C. 2923.41(B)(2) (setting forth, among other factors, the commission of two or more felony convictions as one scenario under which a defendant may be said to have engaged in a "pattern of criminal gang activity"). Moreover, although the jury did not find Miller guilty of felonious assault, that fact is not necessarily inconsistent with the jury having found Miller guilty of participating in a criminal gang. The court specifically instructed the jury that the counts in the indictment were separate and distinct, and that the juror's findings on one count should not influence another count. It further instructed the jury that the definition of a "pattern of corrupt gang activity" encompasses the commission of any felony, including felonies which a person "committed, attempted to commit, conspired to commit, w[as] in complicity in committing, or solicited, coerced, or intimidated another to commit, attempt to commit, conspire to commit, or be in complicity in committing." R.C. 2923.41(B)(2). What the court did not instruct was that the jury had to find Miller guilty of felonious assault before it could find him guilty of participating in a criminal gang. Miller never sought such an instruction, and he fails to engage in any analysis to explain why the jury could not have convicted him of participating in a criminal gang even without finding him guilty of felonious assault. *See* App.R. 16(A)(7); *Cardone*, 1998 WL 224934, at *8 ("If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out.").

{¶91} Taylor and Miller's arguments that the State failed to present sufficient evidence here lack merit. Accordingly, Taylor's eleventh assignment of error and Miller's first assignment of error are overruled.

Miller's Assignment of Error Number Nine

THE TRIAL COURT ERRED WHEN IT GAVE APPELLANT THE MAXIMUM SENTENCE ALLOWED FOR THE CHARGE OF PARTICIPATING IN A CRIMINAL GANG.

{¶92} In his ninth assignment of error, Miller argues that the trial court erred by imposing the maximum sentence upon him for his criminal gang conviction. We disagree.

{¶93} Trial courts have "full discretion * * * to sentence defendants within the bounds prescribed by statute." *State v. Evans*, 9th Dist. No. 09CA0049-M, 2010-Ohio-3545, ¶ 32, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraphs one through seven of the syllabus. Appellate courts apply a two-step approach in reviewing the sentence that a trial court has imposed upon a defendant. *Evans* at ¶ 32, quoting *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 4. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." *Kalish* at ¶ 4. An abuse of discretion implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶94} Miller concedes that his sentence was not contrary to law and the record supports his concession, as his sentence fell within the statutory range for his offense. He argues that the court abused its discretion in imposing an eight year sentence because Taylor was the primary actor here, the victim was not seriously injured, and it was unreasonable for the court to use him "as an example for the gangs in the city." The trial court indicated that it was imposing an eight year sentence here because of the extremely serious nature of gang offenses, the great concern over such offenses in the community, the danger that innocent bystanders can be put in the

middle of gang activity, and Miller's prior criminal history, including prior convictions for aggravated rioting, carrying a concealed weapon, and having weapons under disability. The court had full sentencing discretion and determined that an eight-year sentence complied with the principles and purposes of sentencing, given the seriousness of Miller's conduct and the likelihood of recidivism. Based on our review of the record, we cannot conclude that the trial court abused its discretion by imposing an eight year sentence here. Miller's ninth assignment of error is overruled.

Taylor's Assignment of Error Number Twelve

> THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY IMPOSING COURT APPOINTED ATTORNEY FEES AND COURT COSTS AGAINST APPELLANT EVEN THOUGH APPELLANT WAS INDIGENT AND INCARCERATED.

{¶95} In his twelfth assignment of error, Taylor argues that the trial court committed plain error by imposing costs and attorney fees against him when it was clear that he was indigent. We agree.

{¶96} "R.C. 2947.23 mandates that the trial court assess the cost of prosecution against a convicted criminal defendant." *State v. Payne*, 9th Dist. No. 21178, 2003-Ohio-1140, ¶ 15. Yet, a trial court must orally inform a defendant of his obligation to pay costs at the time of sentencing so as to give the defendant an opportunity to claim indigency and seek a waiver of payment. *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, ¶ 22. Similarly, R.C. 2941.51(D) allows a trial court to order a defendant to pay some or all of his court-appointed attorney fees, but only after finding that the defendant is financially capable of doing so. *State v. Marrero*, 9th Dist. No. 10CA009867, 2011-Ohio-3745, ¶ 20. A trial court commits reversible error when it imposes costs or attorney fees against a defendant in the absence of such a notification. *Joseph* at ¶ 22; *State v. Warner*, 9th Dist. No. 96CA006534, 2001 WL 1155698, *3-4 (Sept. 21, 2001).

The appropriate remedy for such an error as to costs is a "remand * * * to the trial court for the limited purpose of allowing [the defendant] to move the court for a waiver of the payment of court costs." *Stallworth*, 2011-Ohio-4492, at ¶ 32, quoting *Joseph* at ¶ 23. As to an error in the imposition of attorney fees, the appropriate remedy is a remand for "a determination of [the defendant's] financial ability to pay for his court-appointed counsel." *Warner* at *4.

**{¶97}** The record reflects that the trial court imposed costs and attorney fees upon Taylor in its sentencing entry, but did not orally inform him of his obligation to pay costs or inform him that he would be responsible for his attorney fees at the time of sentencing. Taylor, therefore, did not have the opportunity to claim an inability to pay based on his indigency. His twelfth assignment of error is sustained on that basis and the matter is remanded to allow him to seek a waiver of court costs and for a determination of his ability to pay his attorney fees. *Joseph* at ¶ 23; *Warner* at *4.

Miller's Assignment of Error Number Ten

THE CUMULATIVE EFFECT OF THE ERRORS COMMITTED BY THE TRIAL COURT DENIED APPELLANT HIS RIGHT TO A FAIR TRIAL.

**{¶98}** In his tenth assignment of error, Miller argues that cumulative errors in the proceeding deprived him of his constitutional rights to a fair trial. We disagree.

**{¶99}** Cumulative error exists only where the errors during trial actually "deprive[d] a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. "'[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.'" *State v. Hill*, 75 Ohio St.3d 195, 212 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-509 (1983). Moreover, "errors cannot become prejudicial by sheer weight of numbers." *Hill*, 75 Ohio St.3d at 212.

**{¶100}** After reviewing the record, we cannot say that Miller's trial was plagued with numerous errors or that his constitutional right to a fair trial was violated. Therefore, Miller's tenth assignment of error is overruled.

## III

**{¶101}** Taylor's twelfth assignment of error is sustained, and the matter is remanded to afford him the opportunity to seek a waiver of the payment of court costs and for a determination of his ability to pay his attorney fees. Taylor and Miller's remaining, collective twenty-two assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

The costs of Taylor's appeal are taxed equally to both Taylor and the State.  The costs of Miller's appeal are taxed to Miller.

BETH WHITMORE
FOR THE COURT

MOORE, J.
CONCURS.

DICKINSON, J.
CONCURRING.

{¶102} I concur in the majority's judgment and the vast majority of its opinion.  I do not join in Paragraph 29, Paragraph 35, Paragraph 50, or the last sentence of Paragraph 47, all of which are overbroad.

APPEARANCES:

JENIFER C. BERKI, Attorney at Law, for Appellant.

KENNETH N. ORTNER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.